# CHARLESTON

## HANSFORD v. TATE.

Submitted June 8, 1906.    Decided January 15, 1907.

1.  PROCESS—*Motion to Quash—Disqualification of Sheriff.*
    Process directed to a sheriff who is a party to a suit or otherwise disqualified to serve it, is, by the statute of this State, rendered defective and the defendant is entitled to have such process and service quashed or abated on motion to the court made at the proper time.   (p. 217.)

2.  JUDGMENT—*Collateral Attack—Defects in Service—Jurisdiction.*
    Mere defects or irregularities in the service of process do not go to the jurisdiction of the court. ·When there is an actual service on the defendant, although defective, the court acquires the jurisdiction of his person and a judgment rendered against him on such service is voidable only.   (p. 217.)

3.  INFANTS—*Guardian Ad Litem—Jurisdiction.*
    Where there are infant defendants in a cause and the court has appointed a *guardian ad litem* to assert and protect their interests in the cause and such *guardian ad litem* appears and files the answer for such infants, the court has jurisdiction of such infant parties and they are bound by the decrees rendered in such cause.   (p. 218.)

4.  COURTS—*Jurisdiction—Correction of Errors.*
    During the term of a court all the proceedings thereof are in the breast of the court, and under its control, and liable to be stricken out, altered or amended during the term and that without notice to the parties.   (p. 218.)

5.  JUDICIAL SALES—*Title Acquired—Reversal of Decree.*
    Where one purchases under a decree at a judicial sale, while the decree is in full force, it is sufficient for him to know that the court had jurisdiction and exercised it, and that the decree, on the faith of which he purchased, was made, and authorized the sale.   With the errors of the court he has no concern, and a subsequent reversal of the decree will not affect his title acquired under such sale.   (p. 219.)

Appeal from Circuit Court, Doddridge County.

Bill by Tina Vilena Hansford and others against Edward Tate and others.   Decree for defendants, and plaintiffs appeal.

*Affirmed.*

J. V. BLAIR, for appellants.

EDWARD McSWEENEY and W. S. STUART, for appellees.

McWHORTER, PRESIDENT:

This was a bill in the nature of a bill of review filed in the circuit court of Doddridge county by Tina Vilena Hansford and others, infant children and heirs at law of Mary Jane Hansford, by their next friend, Harvey Smith, against Edward Tate and others for the purpose of setting aside the sale of a tract of 80 acres of land sold in the case of Joseph Freeman against A. S. Hansford and others in said court under a decree enforcing plaintiff's vendor's lien amounting at the date of the decree of sale, November 19, 1897, to the sum of $805.61, at which sale made by a special commissioner of the court, said Edward Tate became the purchaser at the price and sum of $1089. It appears that by deed dated June 1, 1887, Joseph Freeman conveyed said tract of 80 acres of land to A. S. Hansford for $640 of which $100 was paid in cash and the residue to be paid in future payments, the grantor reserving his vendor's lien to secure the unpaid purchase money. Hansford and wife conveyed the same to J. W. Smith for $200 cash, Smith assuming to pay the vendor's lien to Freeman. On the 14th of January, 1892, Smith and wife conveyed the said tract with general warranty to Mary J. Hansford in consideration of $700 in hand paid and of love and affection, which deed was recorded on the 29th of January, 1892. On the 27th day of July, 1896, the said Smith and wife executed a deed bearing date the 26th day of May, 1896, conveying the same property to said Mary J. Hansford in consideration of $700 in cash paid, and purporting to correct the deed made on the said 14th of January, 1892, by providing that the same was conveyed subject to said vendor's lien due from said A. S. Hansford to said Joseph Freeman. Mary J. Hansford died intestate on the 22nd day of February, 1897, and on the 15th day of July, 1897, P. M. Ireland was appointed administrator of her estate. Joseph Freeman then instituted his suit which resulted in the said sale to Tate, and in which suit the infant plaintiffs in this suit were made defendants and answered by *guardian ad litem.* When the commissioner sold the land in pursuance of his advertise-

ment W. A. Ridgeway became the purchaser as the highest bidder at the price of $980. The purchaser by paying the cash payment required and executing his notes for the residue of the purchase money complied with the terms of the sale and the same was reported to the court and confirmed on the 19th day of March, 1898. On the 23rd of March, 1898, during the same term of court, the said commissioner tendered a report in the case by which it appeared that Edward Tate had sent to him an up-set bid of $1089 and had paid the commissioner $189 as the cash payment and offered his two notes for $450 each payable as provided in said decree and the special commissioner asked that the former sale be set aside and a rule issued against the former purchaser, W. A. Ridgeway, returnable forthwith to show cause why the sale should not be set aside. On the 25th of March, 1898, said Ridgeway being summoned on said rule and refusing to bid further upon the said land the court set aside the said sale to Ridgeway and directed the commissioner to again offer said land for sale at the front door of the court house, which was done accordingly and knocked down to the said Edward Tate at his bid of $1089, which sale to Tate was confirmed by decree entered on the said 25th day of March and the special commissioner was directed to make a deed to said Tate for said land, retaining a lien to secure the payment of said notes and directed the commissioner to collect the notes when due and apply the proceeds to the payment of cost of suit and expenses of sale, then to the payment of said plaintiff's decree for the said purchase money. The special commissioner accordingly executed a deed on the 29th day of March, 1898, conveying said land to Tate. On the 5th day of May, 1900, Edward Tate made an oil and gas lease upon the said property to the South Penn Oil Company which assigned and transferred the same to the Carter Oil Company, and the said Edward Tate assigned and transferred to T. L. Riddle 1-16 royalty of the said oil and the proceeds from half the gas, and the said Carter Oil Company proceeded to develop the lease and drilled a producing oil well.

At the March rules, 1901, Tina Vilena Hansford and the other infant heirs of Mary J. Hansford, who sued by Harvey Smith their next friend filed their bill in the cir-

cuit court of Doddridge county against Edward Tate, Joseph
Freeman, A. S. Hansford, P. M. Ireland, administrator of the
estate of Mary J. Hansford, deceased, J. W. Smith, M. C. Bee,
Horner-Gaylord Co., a corporation, the Carter Oil Co.,
a corporation and the Eureka Pipe Line Co., a corporation,
alleging that prior to the time of the bringing of the suit
by Freeman to enforce the collection of his lien reserved
in the deed made by him to A. S. Hansford said Freeman
had been paid all of said lien and liability to him had been
discharged and said lien should have been released, and that
if any part of said purchase money had not been paid it was
owing and due from J. W. Smith and not from A. S. Hans-
ford nor from the estate of Mary J. Hansford, said Free-
man, having at the time of the conveyance to Smith agreed
to the provision for the payment of the last two of the install-
ments of the purchase money assumed by Smith to look to
Smith for the payment thereof; that the said Smith and
wife had executed the deed of May 26th, 1896, more than
four years after their first deed to Mary J. Hansford had
been made and executed and caused the same to be re-
corded without the knowledge or consent of said Mary J.
Hansford, and that the same was never accepted by her, and
that said Smith could not avoid his liability for the payment
of the balance due Joseph Freeman and thereby destroy the
effects of his covenants of general warranty contained in his
first deed to Mary J. Hansford; that the suit of Freeman to
enforce his lien was brought and prosecuted at the instance,
procurement and collusion of the said A. S. Hansford
and Joseph Freeman and was a deception practiced upon the
circuit court of Doddridge county and in fraud of the rights
of the infant defendants, the plaintiffs in this suit; that in
fact the sum of money decreed to said Freeman was not
owing to him nor was the pretended judgment directed by said
final decree to be paid out of said surplus proceeds a valid
judgment lien or charge in favor of said Freeman against
the estate of Mary J. Hansford and constituted no lien on
said land or charge upon the said fund arising from the
sale thereof, the same only being wrongfully and fraudu-
lently procured by and through the said A. S. Hansford and
Joseph Freeman, their attorney irregularly and illegally inject-
ed into said suit at its close so as to cover, hold and consume

the surplus proceeds of the sale after payment of costs and
expenses; that there were errors and irregularities in the
proceedings of said suit and the decrees of sale and con-
firmation of sale of so grave a character as to vitiate and
render void the sale of said land and said decrees and orders
entered in the suit for which they should be reversed, an-
nulled and set aside and said land be declared to be the
property and inheritance of said plaintiffs; that it was error
fatal to the validity of said suit for the plaintiff who was
sheriff at the time or his said deputies to serve said origi-
nal summons; alleging the purchaser Tate had notice of the
claim of plaintiffs and was notified to be careful and not hasty
in making said purchase as there would be trouble ahead on
account of the claim of the infants in attempting to sell their
land; that it would inure to plaintiffs' greatest interest to have
the Carter Oil Company continue to operate said land under
said lease, and have said lease held and declared to be for
the use and benefit of the plaintiff to whom the rents, roy-
alties and gas charges should be decreed and turned over
instead of the said Tate and Riddle, who should be held and
treated as trustees only for the said plaintiffs; that the par-
ties be required to answer the bill; that the sale to Edward
Tate be set aside and declared null and void; that the sale
and conveyance of 1-16 royalty of oil to Riddle be declared
void and set aside; that all the orders and decrees in said
suit be declared null and void, set aside and reversed; that
the oil and gas lease to the Carter Oil Company be held and
declared to be for the benefit of the plaintiffs and the roy-
alties of oil, gas rents and charges under the terms of said
lease be decreed to plaintiffs for their use and benefit, and
praying for such injunction and proceedings as would secure
to them their rights in the premises; that a receiver be ap-
pointed to take charge of said land and royalties; that said
land be decreed to belong to plaintiffs and that possession be
delivered to them, reserving to the Carter Oil Company the
right to operate the same for gas turning over said royalty oil,
gas rents, &c. to plaintiffs.

Defendants Edward Tate and T. L. Riddle filed their joint
and separate demurrer and answer to plaintiffs' bill denying
the material allegations of the bill, and especially denying
all knowledge or notice on the part of Tate of any fraud in

the proceedings or affecting the rights of plaintiffs and aver-
ring that Tate was a *bona fide* purchaser of the land for value
at the judicial sale without notice and that he was acting in
entire good faith and without notice of any equity in the
plaintiffs, except such as they were bound to take notice of
as a purchaser at a judicial sale.    Respondents averred that
Edward Tate had fully paid all of said purchase money due
to said special commissioner in accordance with the terms of
his bid and the order of the court confirming the same, and
that no part of the purchase money remained due and un-
paid; that respondent Edward Tate paid the taxes due on
said land for all said years commencing with 1896 and since
then including the year 1900; that said land had been sold
for taxes charged thereon for the year 1896 and purchased
at tax sale by one, Andrew Freeman, who paid the sum of
$15.33 to the sheriff of Doddridge county and that respond-
ent on the 16th day of March, 1898, repaid Andrew Free-
man in full of said taxes; and praying that the prayer of
plaintiffs' bill be refused and respondents' title be declared
good and valid.

Depositions were taken and filed in the case and the cause
came on to be heard on the 3rd day of December, 1904, upon
the bill, taken for confessed as to the defendants Joseph Free-
man, A. S. Hansford, P. M. Ireland, administrator of Mary
J. Hansford, deceased, J. W. Smith, Horner-Gaylord Com-
pany, a corporation, G. W. Farr, special commissioner, and
the Eureka Pipe Line Company, a corporation; the joint and
separate answer of Edward Tate and T. L. Riddle and gen-
eral replication thereto; the separate answer of South
Penn Oil Company and of the Carter Oil Company with gen-
eral replications thereto; and upon the depositions taken and
filed on behalf of the plaintiffs, and of Edward Tate and T.
L. Riddle.  " On consideration thereof it appearing to the
Court that the material facts involved are substantially as
follows, viz:    That Joseph Freeman sold a tract of land con-
taining about 80 acres, being the same premises described in
the bill to A. S. Hansford, reserving a vendor's lien for
unpaid purchase money; that by various deeds, the legal
title became vested in Mary J. Hansford and so remained
at her death; that the plaintiffs in this case are the only
children and heirs at law of the said Mary J. Hansford, de-

ceased, and are infants under 21 years of age; that after her
death, P. M. Ireland was appointed administrator of her
personal estate, and upon the next day after his appointment,
that suit was instituted by Joseph Freeman to inforce his
vendor's lien against said land mentioned in plaintiff's bill;
that Joseph Freeman was at that time Sheriff of Doddridge
county, West Virginia, and the summons in the cause was
delivered to him and served by his Deputy; that said P. M.
Ireland was appointed *guardian ad litem* for the infant chil-
dren by the Court, and answered the bill; that such pro-
ceedings were had in the cause at the first term of Court
that the vendor's lien was declared unsatisfied and the amount
due thereon ascertained, and the land decreed for sale to sat-
isfy the lien of Joseph Freeman, the plaintiff therein; that
the sale, after due advertisement, was made to one W. A.
Ridgeway, which sale was reported to the Court and con-
firmed and a deed ordered to be made to him as purchaser;
that a few days afterwards, and at the same term of Court,
an upset bid was filed; that notice was served upon W. A.
Ridgeway, the purchaser, to appear and show cause why the
sale should not be set aside and upon the hearing, he not resist-
ing the motion, the former decree was set aside and a resale
ordered; that the property was thereupon offered for sale
without any further advertising by the commissioner first
appointed to make sale, and the property was purchased by
the defendant, Edward Tate, and the sale was confirmed, and
a deed duly delivered to him for said property; that the
plaintiffs in this cause seek to set aside the decrees of sale
and of confirmation and to have the same declared null and
void upon two grounds; the first, that of errors apparent
upon the face of the record; the second, that of fraudulent
collusion between Joseph Freeman and A. S. Hansford, the
bill alleging that the vendor's lien of Joseph Freeman
had been fully paid off and discharged and that there
was a conspiracy between Freeman and A. S. Hansford, by
which the land was to be sold and the money received for the
satisfaction of the vendor's lien turned over by Freeman to
A. S. Hansford.

"And it further appearing to the Court that the defend-
ants, Joseph Freeman and A. S. Hansford, allowed the bill
in this cause to be taken for confessed against them and have

not filed any answer denying the charges of fraudulent collusion and conspiracy set up in the bill in this cause, but that the defendant, Edward Tate, filed an answer denying knowledge of the fraud and collusion charged in the bill and further averred that he was an innocent purchaser, having no knowledge or notice of any fraud in the proceedings therein and there was no testimony produced or filed in this cause showing that he was guilty of fraud or collusion or that he had notice or knowledge of the fraud perpetrated by Joseph Freeman and A. S. Hansford.

"And the Court being of the opinion from the foregoing facts that the orders and decrees complained of were fraudulent and collusive and should be so declared as against Joseph Freeman and A. S. Hansford in favor of these plaintiffs, but that the title of Edward Tate, as a innocent purchaser for value, without notice or knowledge of the fraud should be and remain firm and staple and is protected by section 8 of chapter 132 of the Code of West Virginia.

"It is therefore adjudged, ordered and decreed, that the decree of November 19, 1897, in the Chancery cause of Joseph Freeman vs. A. S. Hansford, et al., so far as the same fixes the lien and the amount thereof upon said tract of land and orders sale thereof, and the decree of March 25, 1898, so far as it directs distribution of the purchase money of said land after payment of costs of sale, be, and they are hereby, reversed, annulled and set aside, that this decree shall not restore the decree of March 19, 1898, nor shall this decree affect the title of Edward Tate, or his assignees, to said land, and shall not affect the decree of March 25, 1898, so far as it confirms the report of sale, directs a deed to Edward Tate, awards a writ of possession, and directs payment of the costs and the expenses of sale; and all such orders and decrees are hereby declared and held to be binding and valid as against the plaintiffs herein in favor of the defendants, Edward Tate, T. L. Riddle, South Penn Oil Company, Carter Oil Company and the Eureka Pipe Line Company. And it is further ordered, adjudged and decreed, that the plaintiff's bill be dismissed as to Edward Tate and his assignees, T. L. Riddle, South Penn Oil Company, The Carter Oil Company and the Eureka Pipe Line Company; that said Edward Tate and his said assignees do recover

their reasonable and necessary costs, by them expended in this behalf; and the title of the defendants, Edward Tate, and his assignees under said proceedings, more particularly specified in said Chancery cause of Joseph Freeman vs. A. S. Hansford, et al, is declared to be good and valid as against the plaintiffs herein, and the said Edward Tate and his as-signees are declared to be entitled to the quiet and peaceable possession of said land, and to the oil production heretofore produced as well as that which may be hereafter produced therefrom, free and clear from any claim or demand on the part of the plaintiffs.

"And on motion of the plaintiffs they not asking for a decree of restitution of the proceeds of sale at this present time it is further ordered, adjudged and decreed that the plaintiffs shall be allowed and permitted to take such steps as they may deem proper for the purpose of recovering the proceeds of sale and restitution thereof from the defendants, Joseph Freeman and A. S. Hansford, either by further pro-ceedings in this cause or by further proceedings in the Chan-cery cause of Joseph Freeman vs. A. S. Hansford, et al. ac-cording to the form and procedure which may be considered best adapted for that purpose; and the order heretofore made dismissing said Chancery cause of Joseph Freeman vs. A. S. Hansford, et al, and dropping the same from the docket is hereby vacated and annulled for the purpose of allow-ing the plaintiffs to obtain proper relief if they so de-sire.

"And it further appearing by the record that Harvey Smith is the next friend of the infant plaintiffs in this cause and that he is personally liable for the payment of costs in-curred in this cause according to law, it is therefore adjudged, ordered and decreed that the defendants, Edward Tate and T. L. Riddle, do recover their reasonable and necessary costs incurred in this behalf and they are allowed to recover the same by execution from the said Harvey Smith."

From which decree the plaintiffs by their next friend, Harvey Smith, appealed and say the court erred:

"First, Because it failed to wholly reverse and set aside said decrees of November 19th, 1897; of March 19th and 25th, 1898, and other orders entered in said suit of Jo-

seph Freeman against A. S. Hansford and others; because it refused to cancel and set aside said deed made by G. W. Farr, special commissioner to said Edward Tate for said land, and the said assignment to said Riddle; and because it failed to grant plaintiffs the relief prayed for in their said bill.

"Second, Because it dismissed said bill as to the defendants, Edward Tate, T. L. Riddle and others."

It is alleged in the bill that "it was error fatal to the validity of said suit, for the plaintiff or his deputies to serve said original summons" and that said decree of sale, the sale of the land and the decree confirming the sale to Tate, were void and voidable and ought to be reversed, annulled and vacated. And it is also claimed in plaintiffs' petition for appeal (Counsel for appellants has filed no brief in the cause) that said proceedings were void because of the service of the process by the deputies of the plaintiff who was sheriff of the county at the time of the institution of the suit and the service of the process. Sections 1 and 2 of chapter 41 Code, sections 1297 and 1298 Code, 1906, make provision for executing process in cases where the sheriff is a party to the cause or otherwise disqualified to serve process. Service by the sheriff in such a case is a defective service and voidable. In *McLeod* v. *Harper*, 43 Miss. 42, it is held: "A sheriff is incompetent to serve process in a suit to which he is a party, or in which he is interested. (Rev. Code of 1857, p. 490, art. 75.) And process addressed to such interested officer will be quashed on timely application to the court." And it is there further held that if the party affected by such illegal service made no objection at the time, his administrator could not afterwards impeach the service in answer to *scire facias* to revive the judgment against him, nor could it be impeached collaterally, or on writ of error. The service by the plaintiff's deputy in the original suit was an illegal service, but no objection was raised to it and not being brought to the attention of the court and the defendants having notice of the suit, although by defective process and service, the adult defendants must be held to have waived all objections or exceptions thereto, the infant defendants were not brought in by service of process but were represented by *guardian ad litem* duly appointed for that purpose. Our

statute does not in terms make the process and service void if directed to, and executed by, the sheriff in a suit in which he is a party. It only provides against a questionable practice which had obtained, and renders the process and service liable to be quashed or abated on motion of the party affected by it. In New York, cases have been decided sustaining the service by the officer who was a party to the suit or otherwise interested when the application was made to set aside the return before judgment, and after judgment, while the court had power to open it. *Bennett* v. *Fuller*, 4 John. 485, the court says: "The question is, whether there has been a legal service of this writ. It appears from some of the cases, (Cro. Car 416, 19 Viner, 443, note Moore 547,) to be a doubtful question whether a sheriff can legally serve a writ where he is the plaintiff. In the present case, the writ was served by a deputy. No bail was required, and the sheriff returned the writ, and is responsible. As the practice of deputizing the plaintiff to serve his own writ has been of long duration, we think it would be going too far to say, that the plaintiff cannot, in any cause, serve a writ in his own favor. A declaration in ejectment is always served by the party; and when the writ is served without exacting bail, there can be no oppression, and it is analogus to the service of a declaration in ejectment." *Tuttle* v. *Hunt*, 2 Cow. 436; *Legg* v. *Stillman*, *Id.* 418; *Putnam* v. *Man*, 3 Wend. 202. Such process directed to a sheriff who is a party to the suit or otherwise disqualified to serve it, by our statute is rendered defective, and the defendant is entitled to have such process and service quashed or abated on bringing the matter at the proper time to the attention of the court. In 19 Ency. Plea. & Pr. 583, it is said: "Process addressed to the sheriff in a case in which he is disqualified to serve it, will be quashed on timely application to the court. But the parties affected by such illegal service must raise the objection in time, else it will be considered waived." Citing *McLeod* v. *Harper*, *supra*, and *Shaw* v. *Baldwin*, 33 Vt. 447. And at page 705, same volume, "Mere defects or irregularities in the service of process do not go to the jurisdiction of the court. When there is an actual service on the defendant, although defective, the court acquires the jurisdiction of his person and a judgment rendered against

him on such service is voidable only and not void, and cannot be collaterally attacked." And cases there cited.

There is no question raised here as to the service of the process upon the adult defendants, they made no defense in the original suit but permitted the decree to be entered upon the service had. In *Alexander* v. *Davis*, 42 W. Va. 465, p. 468, the Court, in speaking of the practice of serving infants with process after they are fourteen years of age, says it answers as a useful safeguard and is based upon the presumed discretion of the infant and especially his rights after that age to nominate his own guardian proper, and continues, "But such service is not necessary, and is only practiced because the infant may furnish some aid in the selection and appointment of his *guardian ad litem*, and formerly he could not be appointed until the infant had in some mode been brought before the court, but that is no longer necessary. The appointment of the *guardian ad litem* is necessary, and his acceptance, to be shown by filing an answer, is also necessary—the one somewhat like process issued, and the other like process served, which is necessary to give the court power to decree against him." *Hull* v. *Hull's Heirs*, 26 W. Va. 1.

In the original suit of *Freeman* v. *Hansford* the record shows the appointment of the *guardian ad litem* and the filing of the answer of the infant defendants by him. The court had jurisdiction over the parties and subject matter and to render the decree of sale. The sale to Ridgeway, made on the 19th of March, and the confirmation of the same and the rule against Ridgeway upon the coming in of the upset bid made by Tate and the setting aside of the order of confirmation and the decree ordering the deed to Ridegway were all within the same term of court and while the court yet had control of its orders. "During the term all the proceedings are in the breast of the court, and under its control, and liable to be stricken out, altered or amended during the term, and that without notice of the parties."—*Clendenning* v. *Conrad*, 91 Va. 410. In 17 A. & E. E. L. 999: "Irregularities in the proceedings leading up to or in the conduct of a judicial sale may, when prejudicial to the party complaining thereof, furnish sufficient ground for a refusal to confirm the sale; but they do not render the sale invalid, and

will not suffice to set it aside after confirmation,"—and cases there cited. In Note 3 on the same page : "An irregular sale may be confirmed where this would promote the interests of the parties, some of whom are minors; and the purchaser's title will be perfected by · divestiture of title,"—citing *Swan* v. *Newman*, 3 Head (Tenn.) 288: *Goudy* v. *Hall*, 36 Ill. 313, holds: "The failure of a *guardian ad litem* to answer for the infant, does not take away the jurisdiction of the court over the infant." And it is there further held: "The mere reversal of a decree under which an administrator has sold land, does not divest third persons of the title. If a court has jurisdiction over the parties and the subject-matter, acts performed and rights acquired by third persons under its judgment or decree, and while it remains in force, must be sustained, notwithstanding a subsequent reversal." And in *Gray* v. *Brignardello*, 68 U. S. (Wall. 1) 627, in delivering the opinion of the Court, Justice Davis says at page 634: "It is a well-settled principle of law, that the decree or judgment of a court, which has jurisdiction of the person and subject-matter, is binding until reversed, and cannot be collaterally attacked. The court may have mistaken the law or misjudged the facts, but its adjudication when made, concludes all the world until set aside by the proper appellate tribunal. And, although the judgment or decree may be reversed, yet, all rights acquired at a judicial sale, while the decree or judgment were in full force, and which they authorized, will be protected. It is sufficient for the buyer to know, that the court had jurisdiction and exercised it, and that the order, on the faith of which he purchased, was made and authorized the sale. With the errors of the court he has no concern. These principles have so often received the sanction of this court, that it would not have been deemed necessary again to reaffirm them, had not the extent of the doctrine been questioned at the bar." *Dunfee* v. *Childs*, 45 W. Va. 155-165; *Lafferty* v. *Lafferty*, 42 W. Va. 785.

But it is contended that W. M. Tate, the father of the purchaser, who was bidding for his son, had knowledge of plaintiffs' equity and rights in the premises. Tate testified that he was a purchaser for value without notice. M. C. Bee, who had purchased 216 square feet of the land, says that on

the day of the sale he gave notice to the commissioner and the general public after the commissioner had commenced to cry the sale that A. S. Hansford did not own the land and had no title thereto, and anyone buying the land would certainly buy a law suit; that after he had given such notice to the commissioner "I went to Mr. Tate and told him not to bid on the land that I owned 216 feet with a building thereon, and that the infant heirs of Mary J. Hansford owned the rest of the land." G. W. Farr, the commissioner who made the sale, testified that, "about the time I knocked the land down, I wont say whether it was just before or just after crying it off, but about that time Mac Bee stated something like this, 'Whoever bought that land bought a law suit'; this part of the matter I am confident of." A. S. Hansford testified that Mark W. Tate told him he was going to bid on it, and he asked him not to; and witness went on and told Tate "that that sale was for the purpose of getting the land back in my name," and said that was all the conversation he had with Tate. Mr. Tate in his testimony denied such conversation, says he did have a conversation with Hansford about the sale and Hansford urged him to buy the land; says there was no public notice at the sale that the title was not good; that witness asked Commissioner Farr " if the title was good; if he could make a good title, and he said yes, if it was sold at court it would be a good title."

All this matter contained in what Bee claims to have said to Tate at the time of the sale appeared in the record of the case in which the land was being sold. The land was conveyed by Freeman to Hansford and the lien retained as stated. The land was afterwards conveyed to Mary J. Hansford who died intestate and her title to the land would descend to her children as her heirs and was subject as the record shows to Freeman's vendor's lien for which it was being sold. The record also shows that 216 square feet of the tract had been conveyed to Bee and was also liable to be sold in discharge of said vendor's lien. So that the interest of the heirs as well as of Bee appeared in the record and Bee's notice to Tate that the land belonged to the heirs and himself and that in buying the same he would buy a law suit would convey to Tate no further information than the record

showed, and the same was being properly sold as appeared upon the face of the record. As to the assumption by J. W. Smith of the payment of the vendor's lien, that was a personal matter between the parties and in no way affected the lien for purchase money due to Freeman, the land was in no way released from liability therefor. The bill was taken for confessed as to Joseph Freeman and A. S. Hansford, which bill alleged collusion and fraud in the procurement of the decree of sale in the case of *Freeman* v. *Hansford* and others, besides, it is proved in case at bar that the purchase money had been paid to Freeman before he brought his suit. Therefore the court committed no error in reversing said decree of sale, and dismissing plaintiff's bill as to the defendants Tate and Riddle, and the decree here appealed from of December 3, 1904, is affirmed and the cause is remanded to the circuit court of Doddridge county for further proceedings there to be had therein.

*Affirmed.*