# CHARLESTON.

THOMPSON v. BUFFALO LAND & COAL CO. *et als.*

Submitted February 29, 1916.    Decided March 14, 1916.

1.  EQUITY—*Pleading—Verification—Guardian Ad Litem.*
      A guardian ad litem is not required to make oath to the answer filed for the infant to a bill for partition, when the bill is not sworn to.  (p. 786).

2.  PARTITION—*Right to Remedy—Infancy of Cotenant.*

The right of a cotenant to have partition is an absolute right, and the enforcement of it is not obstructed by the infancy of his cotenant.    (p. 786).

3.  INFANTS—*Pleading—Answer Signed by Guardian Ad Litem.*

It is not material whether a guardian ad litem signs the infant's name, as "by" himself, as guardian ad litem; or signs his own name first, as guardian ad litem "for" the infant.  Either manner of signing shows the answer is filed on the infant's behalf.   (p. 786).

4.  EQUITY—*Final Decree—Jurisdiction to Set Aside.*

A court has jurisdiction over its final decrees during the term at which they are made, and may set them aside at any time before adjournment.   (p. 786).

5.  PARTITION—*Decree for Sale of Undivided Interest—Subsequent Decree—Conflict.*

Having improperly decreed the sale of an undivided interest in land, in a partition suit, it is not reversible error to decree the sale of the whole at a subsequent term, without reversing the former decree, and sell thereunder.  Such subsequent decree is only supplemental to, and not in conflict with the former one.   (p. 787).

6.  SAME—*Sale—Grounds.*

To justify the sale of land, in a partition suit, it must appear that the land is not susceptible of partition in kind and that the interest of the parties will be promoted by a sale.   (p. 787).

7.  SAME—*Appeal—Decree of Finding of Fact—Presumption.*

Where commissioners to make partition have reported the land not susceptible thereof, assigning reasons therefor, to which there were no exceptions, and the court thereupon finds accordingly, and decrees a sale and the land is sold, upon bill of review to reverse the decree of sale for errors of record, averring the loss of the commissioners' report, and assailing the court's decree on the finding of fact, such finding will be presumed to be correct, in the absence of any averment or proof of fraud.   (p. 788).

8.  INFANTS—*Guardian Ad Litem—Authority—Special Judge.*

A guardian ad litem has no authority to consent to anything that will, in any manner, prejudice the infant's interest, but he may agree to such matters as are intended only to facilitate a hearing of the cause.  He may consent that a certain designated person, possessing the requisite qualification, may hear the cause as special judge, the regular judge not sitting.   (p. 788).

9.  PARTITION—*Partition Sale—Publication Notice.*

It is error to sell land without advertising notice thereof, as

required by Sec. 1a I, Ch. 132, ser. sec. 4932, Code 1913, if the land appears to be of greater value than $500.00.   (p. 789).

10. JUDICIAL SALES—*Rights of Purchaser—Reversal of Decree—Grounds.*

Where land has been judicially sold and confirmed to the purchaser who is not an interested party to the suit, his right is protected, and the decree of sale will not be reversed, on bill of review, for error not affecting the jurisdiction, when it appears that the only relief sought is the recovery of the land, and that no other relief can be obtained by the suit.   (p. 789).

11. JUDGES—*Judicial Sales—Validity—Purchase by Judge.*

That a judge should have no interest in the subject matter of suits which he decides is a sacred principle to be jealously guarded in the administration of justice.   But a judge who has no interest in decreeing a sale of land, does not violate this principle by afterwards becoming the purchaser at the sale, provided the sale is fairly made and is confirmed by another judge.   (p. 790).

Appeal from Circuit Court, Mingo County.

Suit by George Thompson against the Buffalo Land & Coal Company and others.   From decree for defendants, plaintiff appeals.

*Affirmed.*

*Linn & Byrne* and *Wiles & Bias,* for appellant.

*Williams, Scott & Lovett, Holt, Duncan & Holt* and *Goodykoontz & Scherr,* for appellees.

WILLIAMS, PRESIDENT:

By this appeal George Thompson seeks reversal of a decree of the circuit court of Mingo county, dismissing his bill therein filed to have reviewed and reversed a decree of sale for alleged errors of record, in a partition suit brought against him by his brother and cotenant Allen Thompson.   A demurrer to the bill was sustained, and, plaintiff not desiring to amend, his suit was dismissed.

The partition suit was brought in December, 1901, and final decree made in September, 1902.   Appellant was then an infant about eleven years old.   J. B. Wilkinson was appointed his guardian ad litem and filed a formal answer for him on the 23rd of January, 1902, and three commissioners were appointed, one of whom was a surveyor, and were directed

"to go upon the said land and make partition of same between the said plaintiff and defendant, if the said land, in their opinion, be susceptible of partition, having due regard to location, quality, quantity and value and the interest and welfare of said George Thompson, and, if in the opinion of said commissioners, said land be not susceptible of partition, that they report their reasons therefor." The decree further required them to give reasonable notice to the plaintiff and to the guardian ad litem for defendant, of the time and place of beginning their work of executing the decree, and to make a complete map of the land, and a report of their proceedings to the court. Copies of all papers, depositions and orders, filed and taken in the cause are exhibited with the bill of review, except the report of the aforesaid commissioners, which, the bill avers, is shown by the clerk's certificate to have been lost out of the file of papers, and could not be found. But the decree, made May 21, 1902, states that the cause was heard on the report of said commissioners, to which there were no exceptions, and that it appeared therefrom that "the tract of 102.1 acres situate near the mouth of Buffalo Creek in Mingo County, is not susceptible of partition, as is so reported by said commissioners." The court confirmed the report, and decreed that "a one-half undivided interest in the said land be sold and the proceeds arising from the sale thereof be disbursed to the parties properly entitled thereto, under the direction and provisions of the court," and appointed J. L. Stafford a special commissioner to make the sale, on terms of one-third cash, one-third in three, and one-third in six months. On the 5th of September, 1902, Stafford sold the undivided one-half to E. S. Doolittle, trustee, at $771.00, he being the highest bidder, and reported his sale to court on the following day, whereupon the sale was confirmed by decree made by John S. Marcum, special judge. At another day of the same term, to-wit, on the 12th day of September, 1902, on motion of the plaintiff, the decree of confirmation was set aside and the special commissioner directed to refund to the purchaser the cash payment and cancel and surrender to him his notes for the deferred payments of purchase money; and, on the same day, the cause was reheard on the pleadings and papers,

theretofore filed, and orders made, and a decree made, reciting that the decree of May 21, 1902, directing a sale of an undivided half interest, had been made through oversight or inadvertance, and that the entire interest in the tract should have been sold, and decreed a sale of the whole tract, and appointed J. L. Stafford to make the sale, either publicly or privately, and, if not sold privately, requiring him to publish notice of the time, place and terms of sale for four weeks, in the Southern West Virginian, a newspaper published in the town of Williamson. On the 17th of September, during the same term, the special commissioner sold the tract of land, privately, to E. S. Doolittle, trustee, at the price of $1,536.00, he paying one-third cash, and executing his two interest bearing notes, payable in three and six months, for the other two-thirds. The commissioner immediately reported the sale to court, and, there being no exceptions to it, it was confirmed. The decree of confirmation authorized the purchaser to anticipate payment of his notes, and directed the commissioner to bring the proceeds into court to be disposed of as it should direct; and appointed said Stafford a special commissioner to make the purchaser a deed, upon payment of all the purchase money. All the foregoing decrees, made at the September term, 1902, were entered by John S. Marcum, special judge.

A *nunc pro tunc* decree, entered January 24, as of January 9, 1903, recites that special commissioner Stafford had collected all the purchase money, and directs him to pay the costs of suit and expenses of sale out of the proceeds, and to turn over one-half the remainder to Allen Thompson the plaintiff, and the other half to John Thompson, the guardian for the infant defendant George Thompson.

By a writing dated September 17, 1902, the attorney for plaintiff and the guardian ad litem for defendant agreed that John S. Marcum should act as special judge and decide the case. The supplement to the record, brought up since this appeal was allowed, shows that said Marcum was also elected a special judge and qualified by taking the required oaths as such.

The first assignment of error averred in the bill of review, viz.: that the guardian ad litem did not file his answer under oath, is not well taken. The suit was one for partition of

land, and not a proceeding, under the statute, to sell lands of an infant, in which latter case the statute expressly requires the answer of the guardian ad litem, as well as that of the infant, if he be over fourteen years of age, to be made under oath. The adult cotenant had a right to demand partition, and, in the event the land was not partitionable, to have it sold and the money apportioned. This was his absolute right, and the infancy of the other cotenant was no obstruction to its enforcement. It was like any other ordinary chancery suit and, in such suits, the law does not require the answer of a guardian ad litem to be under oath, unless the plaintiff has sworn to his bill; and the bill in this case was not sworn to. Sec. 38, Ch. 125, ser. sec. 4792, Code 1913; and *Eakin* v. *Hawkins,* 52 W. Va. 124. There is nothing in the contention that the guardian ad litem did not properly sign his name. The answer purports to be made by the infant defendant, "by his guardian ad litem." What difference does it make whether he signs it "George Thompson, By J. B. Wilkinson, his guardian ad litem;" or, "J. B. Wilkinson guardian ad litem for George Thompson?" Either form of signature shows the answer to be the guardian's act on behalf of his ward.

The bill avers that the court did not confirm, by proper decree, the sale made September 17, 1902. The decree brings the cause on to be heard on the report of sale, reciting that there are no exceptions to it, and then proceeds as follows: "the said report and sale are in all things approved and confirmed." There is certainly no ambiguity in the language here quoted. Terms more explicit and comprehensive could hardly be chosen to confirm a sale. The decree confirmed both the report of sale and the sale.

The sale of the one-half interest, made pursuant to the decree of May 21, 1902, was not confirmed until the 6th of September. We need not stop to inquire whether that sale was properly confirmed or not, for the reason that, on the 12th of September, at the same term of court, the sale and the decree confirming it were set aside, and the commissioner was directed to refund to the purchaser the cash payment which he had made and deliver up his notes for cancellation. The matter was then still in the breast of the court. A court

has control over its final decrees during the term and may annul them at any time before the adjournment. 8 Ency. Dig. Va. & W. Va. Rep. 512. On the same day, to-wit, September 12, 1902, another decree was entered, directing a sale of the whole tract, and reciting that the decree of May 21st, directing the sale of the one-half only, had been inadvertently entered. It does not purport to set aside that decree, but only set aside the sale made thereunder, and the decree confirming it, entered only a few days before at the same term. This decree was supplemental, or an enlargement of the final decree of May. The sale of the whole necessarily included the sale of the undivided half and it was immaterial that there were two decrees of sale, the latter embracing the subject matter of the former, and more. As there could be but one sale of the land, and that as an entirety, the second decree of sale may properly be regarded as simply supplemental to the first. It does not reverse it. It was clearly within the jurisdiction of the court to make the second decree of sale.

It is averred that John S. Marcum, who acted as special judge, in entering the decrees of September 12th and 17th, was without authority. This averment is contradicted by the record.

The bill avers that it does not appear from the pleadings or evidence that the interest of the infant would be promoted by a sale of the real estate. This averment, also, is not sustained by the record. The depositions of witnesses, acquainted with the tract of land, taken and filed in the partition suit, prove that the interest of the infant would be promoted by a sale, rather than a partition in kind. Sec. 3, Ch. 79, ser. sec. 3916, Code 1913. *Zirkell* v. *McCue*, 26 Grat. 517. The court determined from the report of the commissioner, which was the proper method of determining the question, *Stewart* v. *Tenant*, 52 W. Va. 559, that the land was not partitionable in kind. The report of the commissioners being lost, the grounds for their conclusion do not appear. But whatever they were, they appear to have satisfied the chancellor, for he decided the fact according to their report; and, in the absence of any charge of fraud, the presumption is his finding was correct.

It is urged in brief of counsel that the guardian ad litem

had no authority to bind his infant by an agreement to submit the case for decision to a special judge. That was a mere formal matter to expedite the case, and was in no way prejudicial to the infant's rights. While a guardian ad litem has no authority to consent to anything which will prejudice the infant's rights, he nevertheless has a right to consent to, or waive any matters which merely facilitate the trial of the cause, and do not in any sense prejudice his ward's interest; such, for instance, as consenting to a hearing of the cause at a particular or special term, if it is ready for hearing; or, as in this case, consenting to a special judge to hear and decide the cause, the regular judge being so situated as to render it improper for him to act. 22 Cyc. 664; *Kingsbury* v. *Buckner,* 134 U. S. 650, 33 Law Ed. 1047, and discussion at page 1059.

It is likewise insisted in brief that it was error to sell the land without first advertising notice thereof as required by Sec. 1a I, Ch. 132, Code 1913, it appearing that the land was of greater value than $500.00. The decree of sale was entered on the 12th, the land was sold immediately at private sale and was confirmed on the 17th of September, 1902. Hence, there was no advertisement as the statute requires. The decree made no provision for advertisement, in case the commissioner should sell privately, but it did provide for publication of the notice in a newspaper, in case the land was not sold privately and should be offered for sale publicly. The sale of it privately, without publication of notice, was clearly reversible error. *Spies* v. *Gauley Coal Land Co.,* 61 W. Va. 19; and *Duncan* v. *Custard,* 24 W. Va. 730. But it did not affect the jurisdiction. The court had jurisdiction of the subject matter and the parties, and, according to the facts disclosed by the record, the case presented was one justifying a sale of the land. A sale was made and confirmed and apparently a deed has been made to the purchaser. The question then arises, what affect does this error have upon the sale, can the sale be avoided and the infant be allowed to recover his interest in the land? We are bound, by the statute and our decisions construing it, to answer no. Sec. 8, Ch. 132, Code 1913, provides that, in such case, the title of the purchaser shall not be disturbed; and it necessarily follows that, for such error, the plaintiff can not have redress

against the land. This court has frequently held that a sale made under decree of court to a stranger, or even to a party to the suit, provided he is not the party moving the sale, can not be set aside for error, not jurisdictional. *Chapman v. Branch,* 72 W. Va. 58; *Klapneck & White v. Keltz,* 50 W. Va. 331; *Perkins v. Phlazgraff,* 60 W. Va. 121. Even if the decree of sale be reversed, in such case, it can not affect the purchaser's right. *Hansford v. Tate,* 61 W. Va. 207. "It is not the advertising nor bids private or public that make a sale judicial. The decree of confirmation alone gives it character as such and places it beyond attack for errors or irregularities which might have been taken advantage of prior to such decree." *Klapneck & White v. Keltz, supra.* The rule is otherwise where the record shows the absence of necessary parties to the suit; or where the purchaser is a party and procured the sale to be made. *Moore v. Ligon,* 22 W. Va. 292; *Peck v. Chambers,* 44 W. Va. 270; *Dunfee v. Childs,* 45 W. Va. 155; *Calvert v. Ash,* 47 W. Va. 480; *Ammons v. Ammons,* 50 W. Va. 390; and *Core v. Strickler,* 24 W. Va. 689.

The record discloses that appellant's share in the proceeds of sale was paid over to his regularly appointed guardian. His only redress is, therefore, against him and his sureties on his bond for the fund. The guardian is not a party to his bill. It would avail him nothing to reverse the decree for the error pointed out.

The fact that the decree for the sale of the one-half interest was made by the regular judge, who thereafter became the purchaser of the land, does not render the sale void. It is not averred, nor does it appear, that the judge had any interest in the land, or then thought of purchasing it; nor is it averred the land did not sell for its full market value at that time. The judge was not disqualified to enter the decree of sale made in May, 1902. True, it is a sacred principle which should be jealously guarded and enforced in the administration of justice, that a judge should have no interest in the cases he decides, still our decisions hold, there being no statute forbidding it, that the judgment or decree, rendered by an interested judge, is not void but only voidable. *Findley v. Smith,* 42 W. Va. 299; and *Coal Co. v. Doolittle,* 54 W. Va. 211; *L. & N. R. R. Co. v. Taylor,* 93 Va. 226. But it is not

averred, nor does it in any way appear in this case that Judge Doolittle had any interest when he entered the decree. The purchase which he afterwards made was confirmed to him by a decree made by a special judge.

Seeing that a reversal of the decree of sale could afford no relief to plaintiff, and that no redress can be obtained by his bill of review, we affirm the decree dismissing it. *Lowther et al.* v. *Lowther-Kaufman Oil Co.,* 75 W. Va. 17, 83 S. E. 49.

*Affirmed.*