# CHARLESTON.

DUDLEY v. BARRETT *et als.*

|66    363
|66  · 595

Submitted September 7, 1909.    Decided December 1, 1909.

1. ASSIGNMENTS—*Enforcement of Partial Payment of Debt—Jurisdiction.*

   For the enforcement of payment of a part of a debt, assigned by the creditors without the assent or acceptance of the debtor, there is no jurisdiction in a court of law, but such partial recovery may be had in a court of equity. (p. 366).

2. ELECTION OF REMEDIES—*Legal or Equitable Suit—Election.*

   A plaintiff in a suit in equity, for whose benefit an action at law is pending for the recovery of the demand set up in his bill, cannot be compelled to elect as to which suit he will prosecute, if there appears to be jurisdiction of such demand in the equity court and none in the law court. (p. 372).

3. SAME—*Nature and Grounds.*

   Before an election of remedy can be ordered, it must appear that the party has more than one remedy. (p. 372).

4. ASSIGNMENTS—*Construction.*

   A paper, assigning a demand, in general terms, to a named person and others therein named, and declaring the purpose of the assignment to be payment of a certain debt, described, to each of the persons named, and the residue, if any, to be intended for the assignor, is construed and held to be an assignment of certain parts of the debt to each of the persons named. (p. 367).

5. REFERENCE—*Premature Reference—Effect.*

   An appellate court will not reverse a decree, properly made on a commissioner's report for the sole reason that the cause, in the condition in which it was, when the order of reference was made, ought not to have been referred to him. (p. 368).

6. PLEADING—*Construction.*

   Words in a pleading are to be taken in the sense in which the context shows they were used. (p. 370).

7. Evidence—*Deputy Sheriff—Collection of Taxes—Presumption.*
   After the lapse of a reasonable time, from the date on which a deputy sheriff should have collected, and accounted to his principal for, taxes charged to him for collection, he will be presumed, in the absence of evidence to the contrary, to have collected them. (p. 370).

8. Taxation—*Collection—Action on Collector's Bond—Variance.*
   In an action on a bond of a deputy sheriff for the recovery of money due from him on account of taxes collected by him or which he should have collected, a variance of proof from the pleadings is not established by the fact that the bill claims a balance due on account of the last two years of the four year period, while the proof shows that collections of said years were applied on the accounts of the preceding years so as to produce such balance. (p. 371).

9. Payment—*Taking New Simple Contract for Specialty.*
   The taking of a new simple contract obligation for a specialty debt does not pay the original debt, nor suspend the right of action on the original contract. (p. 371).

10. Equity—*Decree for Co-defendant—Prayer for Relief.*
    Upon a bill in equity, stating a cause of action, constituting a common basis for claims due the plaintiff and certain defendants against other defendants, and praying relief to the plaintiff and the defendants, having demands based on such common ground, which is taken for confessed as to a defendant of the class, last named, a decree may properly be rendered in his favor, although the record shows no express prayer by him for relief. (p. 372).

11. Same—*Parties—Pendente Lite.*
    It is not error to pronounce a decree in favor of a *pendente lite* purchaser who has not been made a party to the suit. (p. 374).

Appeal from Circuit Court, Wood County.

Bill by J. W. Dudley against A. T. Barrett, W. A. McCosh, and others. From the decree Birdie K. McCosh, administratrix of W. A. McCosh, he having died, appeals.

*Affirmed.*

*William Beard,* for appellant.

*W. E. McDougle,* for J. T. Dunbar. *Dave D. Johnson,* for D. E. Leach. *Smith D. Turner,* for West Union Bank. *Dan B. Leonard,* for B. F. Blackshire. *Merrick & Smith,* for Ransom Rector.

POFFENBARGER, JUDGE:

A. T. Barrett, a deputy for J. L. Buckley, sheriff of Wood county, for the years 1889, 1890, 1891 and 1892, entered into a bond, in the penalty of $20,000.00, conditioned for the faithful discharge of his duties as such and the accounting for and paying over of all sums of money that should come into his hands by virtue of his office together with A. J. Hannaman, J. R. Barrett, P. C. Barrett, W. A. McCosh and J. T. Dunbar, his sureties. He defaulted and, on October 1, 1900, Buckley made a settlement with him, according to the allegations of the bill in this cause, showing a balance of $9,247.73, due from him.     On account of this balance, four negotiable notes for $2,500.00, $1,500.00, $1,500.00 and $2,500.00, respectively, dated, respectively, Jan. 1, 1901, Feb. 9, 1901, Feb, 9, 1901, and March 28th, 1901, all payable to the order of J. R. Barrett and A. J. Hannaman and apparently endorsed by them, and all payable one year after date, except the last one which was payable six months after date, were delivered to Buckley, who assigned the first one to the First National Bank of Grafton, the second to Ransom Rector, the third to B. F. Blackshire, and the fourth to the West Union Bank of West Union, West Virginia.     The first National Bank of Grafton assigned and transferred said first note to John W. Dudley.     Later, just when it is not disclosed, Buckley executed the following assignment of the balance due him from Barrett:

"For value received I hereby assign transfer and set over all of my right title and interest in and to the within bond; unto J. W. Dudley and others named below in and to my claim against A. T. Barrett, amounting to 9247.73 with interest from Oct. 1st 1900, secured by this bond.     This assignment is for the purpose of paying to said Dudley 2500. with int. from Jan. 1st 1901 to B. F. Blackshire 1500. and Ransom Rector 1500. with interest from Feby. 9th 1901 and to the West Union Bank 2500. with interest from Sept. 28 1901 and the residue of said claim if any when collected is to revert to myself.

J. L. BUCKLEY."

On the 8th day of April, 1902, Dudley commenced this suit in equity against Buckley, Barrett and his sureties and others to obtain a decree for the amount so assigned him, claiming equity

jurisdiction on the theory of want of remedy at law, because he had an assignment, as he alleges, of only part of Buckley's demand against Barrett and his sureties. He made all the other assignees parties defendant to his bill and prayed decrees to himself and them severally for the amounts due him and them, respectively, under the assignment. There was a reference to a commissioner and such further proceedings as resulted in a decree, requiring A. A. Kellar, Committee of W. A. McCosh, (who became insane after the institution of the suit), J. L. Buckley, A. J. Hannaman, J. R. Barrett and P. C. Barrett to pay to Dudley $3,359.20, to Rector $1,910.95, to Blackshire $1,910.95, to the West Union Bank $3,081.18 and to D. E. Leach, to whom Buckley assigned the residue of the Barrett debt, $976.38. After the entry of this decree, McCosh died and Birdie K. McCosh, his administratrix, has appealed from it.

The overruling of the demurrer of Kellar, the committee of McCosh, is made the basis of one of the principal assignments of error. First, it is said the notes executed by Barrett and transferred, as hereinbefore stated, without the consent of the sureties of Barrett, did not operate as payments of portions of the debt on account of which the notes were given. This suggestion seems to be intended as an argument against the view that the debt had been divided by the creditor into parts, by assignments, without the consent of the debtor, so as to confer jurisdiction in equity to enforce payment of a portion of the debt, agreeably to the principles declared in *Kimberland* v. *Bank*, 16 W. Va. 555. As the Barrett debt was due upon a sealed instrument and the notes were not under seal and there is no evidence tending to prove that they were accepted as payments on the debt, they were obviously not payments. Merger takes place only where a security of superior grade, given by the debtor to the creditor, is substituted for one of inferior grade, without any agreement as to its effect upon the original debt. *Andrew* v. *Smith,* 9 Wend. (N. Y.) 23; *Weakly* v. *Bell*, 9 Watts (Pa.) 273; 20 Am. & Eng. Ency. Law 596. It is also insisted that the assignment hereinbefore quoted was an assignment of the whole debt to the parties named in it, Dudley, Rector, Blackshire and the West Union Bank, and consequently that their remedy was an action at law, since the statute gives the assignee of a chose in action a right to sue at law and in-

hibits a suit in equity in such case.   We are of the opinion, how-
ever, that the assignment, properly construed, separated the
debt into five parts giving one each to Dudley, Rector, Blackshire
and the West Union Bank and leaving the residue to Buckley.
Though the first part of the assignment, clothed in general
terms, imports an assignment of the whole debt, $9,247.73, it
must be read in connection with that which follows, showing
the purpose to separate it into parts.    The sums specified
amounted to $8,000.00.   The amount of the whole debt was set
forth in order to show that there would be a balance left to the
assignor, as well as to identify the fund or debt out of which the
assignments were made.    The terms, "I hereby assign transfer
and set over all of my right title and interest in and to the
within bond; unto J. W. Dudley and others named below,"
is susceptible, under a well settled rule of interpretation, of ap-
plication to several and separate assignments of portions of the
debt.    Particular words may be so distributed and referred to
portions of the written instrument as to make them conform
to the general intent expressed by the instrument, it being con-
sidered as a whole.   So far as the record shows, there was no
connection between Dudley, Rector, Blackshire and the West
Union Bank, except that they held paper on which Dudley
was endorser and took assignments from him out of this fund
due him from Barrett for their protection and security.  Neither
by the terms of the assignment nor the surrounding circum-
stances, does it appear that there was any reason for their taking
a joint assignment of the debt or that they would have been
benefited thereby.   The intention to leave to Buckley the re-
mainder of the Barrett debt after the payment of the amounts
due to Dudley, Rector, Blackshire and the bank is expressed on
the face of the paper.   All the substantial, material and con-
trolling facts disclosed by the instrument indicate an inten-
tion to make separate assignments.    Nothing stands in the
way of the view that they were separate and partial except the
general terms of the paper quoted above.   For the reason al-
ready stated, these terms are not controlling.   "Where several
words importing power, authority and obligation are found at
the commencement of a clause containing several branches, it
is not necessary that each of those words should be applied
to each of the different branches of the clause; it may be con-

strued *reddendo singula singulus;* the words giving power and authority may be applicable to some branches, those of obligation to others. * * * Words in different parts of a statute must be referred to their proper connections, giving each in its place its proper force." Lewis' Suth. Stat. Constr., section 442; *Building Ass'n.* v. *Sohn,* 54 W. Va. 101, 113. It is hardly necessary to say that the rules of interpretation applicable to statutes and contracts are substantially the same. Applying this principle, we read the assignment as if it had said "I hereby assign, transfer and set over to J. W. Dudley $2,-500, with interest from Jan. 1, 1901, to B. F. Blackshire $1,500.00 and Ransom Rector $1,500.00 with interest from Feb. 9, 1901, and to the West Union Bank $2,500.00 with interest from Sept. 28, 1901, out of the amount due me on the within bond from A. T. Barrett, $9,247.73." In so construing the paper we make the substance thereof, and the plain purpose of the parties thereto, prevail over its form. As jurisdiction in equity is admitted in the brief of counsel for the appellant, provided the assignment broke the debt up into parts, without the consent of the debtors, this conclusion obviously settles this contention against him.

It also answers the argument predicated upon the allegation in the bill to the effect that the plaintiff was not advised as to whether the other parties interested in the assignment desired to, or would, unite with the plaintiff in the suit. Whether such an allegation would in itself confer jurisdiction, we need not say, for the reason that a solid ground of jurisdiction is found in the division of the debt into parts by the assignment without the consent of the debtors.

Alleged prematureness of the decree of reference to a commissioner is assigned and insisted upon as a ground of error. The decree of reference was a mere interloctory order. Though prematurely made or otherwise improper, no appeal from that decree alone could be taken. It is necessary to await the final decree on the merits or some decree that is made appealable by the statute. In the final decree, the equities of the parties, growing out of any erroneous interlocutory orders or decrees, can be settled and adjusted. If it be a matter of unnecessary cost, the court may place it upon the party at whose instance it was made. If an order of reference be made in a

case in which the circumstances justify or necessitate it, and is improper only because it was made before necessity therefor was developed by the pleadings and the evidence, neither this Court, in reviewing the decree, nor the trial court, in pronouncing it, would correct the mere formal imperfection or defect in the record by reversing and setting aside the decree of reference. "This Court would not reverse a decree, which was properly made on a commissioner's report, for the sole reason that the cause in the condition, in which it was, when the order of reference was made to the commissioner, ought not to have been referred to him." *Seabright* v. *Seabright,* 28 W. Va. 412 (pt. 6 syl). It is the duty of this Court, on an appeal, to pronounce such a decree as the circuit court should have pronounced, and not to affirm a decree, unless it be such as the circuit court should have entered. Therefore, a circuit court, having prematurely referred a proper cause to a commissioner, should treat the report of the commissioner as if it were one made in a case properly referred, if the case developed before the commissioner and by the pleadings and evidence, shows the cause to be one which ought to have been referred to a commissioner at a date or stage later than that at which it was referred. It seems, too, that if a reference be made in a cause in which there is no occasion for a reference and evidence be taken before the commissioner, and returned by him, the court may properly consider it and render a proper decree on the merits, without setting aside or reversing the erroneous order of reference. In *Bresee* v. *Bradfield,* 99 Va. 331, the court held as follows: "Where there is nothing in the pleadings and proofs to make an account proper and necessary, and the court has improvidently granted an order of reference, it is harmless error, for which the cause should not be reversed."

A complaint going to the decree of reference as well as the decree on the merits, is that they are said to be broader in their scope than the bill, because the latter, in terms, claims a balance due on account of "taxes collected," while the order of reference requires a report as to the amount due on account of tax collections "and other official duties, or default in payment of monies, for which the said A. J. Barrett became liable as deputy" &c., and the proof shows that fee bills of

officers went into his hands for collection, and some of these, as well as some of the taxes, were never in fact collected. The settlement, ascertaining the balance due, as alleged in the bill, was made October 1, 1900, nearly eight years after the expiration of the term of office. While the balance claimed is described as due on account of taxes collected, all the main facts and circumstances showing the nature of the cause of action and how it accrued and the making of a settlement, are set forth. Viewing the word "collected" in connection with these, we think it is used to indicate not only actual collections, but also what should have been collected and has been lost and is, therefore, to be treated as collected. It is not to be supposed that such demands were overlooked in a settlement made so long after the duty to pay over the money had attached. Words in a pleading are to be taken in the sense in which they are shown by the context to have been used. Substance must prevail over mere form. *Ceranto* v. *Trimboli,* 63 W. Va. 340 (60 S. E. 133). A deputy sheriff's conduct, powers and liability are governed by law as well as the contract. He is clothed with the powers of his principal, and his duty is coextensive with his powers. It was his duty to collect the taxes and fee-bills, if collectible, and, if not collectible, to return them in due time, just as an officer is required to make the money on an execution or show why he has not done so. After the lapse of a reasonable time, without a showing to the contrary, it is presumed that he did make it. *Chapman* v. *Harrison,* 4 Rand. 336; *Tyree* v. *Wilson,* 9 Grat. 59; *Ballard* v. *Thompson,* 19 Grat. 14; Murfree on Sheriffs, section 976; Murfree Off. Bonds, section 459. We think the bill covers the relief granted.

McCosh did not appear in the cause. On the 19th day of August, 1904, his insanity was suggested by the West Union Bank, and, on November 23, 1904, it appearing that A. A. Kellar had been appointed committee for him, a *scire facias* was awarded against Kellar to show cause why the suit should not proceed against him as committee. On December 12, 1904, John G. Hogan was appointed guardian *ad litem* for McCosh and filed his answer. On March 30, 1905, Kellar appeared and filed his demurrer and answer. In the mean time, the order of reference   had been made and partially  executed.

Most, if not all, of the evidence had been taken, and the court ordered the commissioner to proceed with the execution of the decree and make his report. The complaint is that the court did not make a new reference and cause all the work to be done over again. McCosh was bound by what had been done before he became insane. Furthermore, his committee and guardian *ad litem* could have had the witnesses re-called for further examination, if they saw any reason therefor. This position of counsel for the appellant is clearly untenable.

It is said there is a variance of the proof from the allegations, because the bill says the balance due is on account of taxes for the years 1891 and 1892, while it appears that collections, made on account of those years, were so applied as to pay balances due on account of the years 1889 and 1890. The bond covered the four year period, in view of which there was no special reason for keeping each year's business separate from the others, as there would have been, had there been a separate bond for each year, or had the period been divided, as to liability, by reason of there having been two or more bonds, covering different parts of it, and having on them different sets of sureties. Under the circumstances, the sheriff and his deputy could apply the payments as they saw fit, and there is no variance.

To the suggestion that the acceptance of the notes suspended right of action on the bond, or extended the time, and so released the sureties, it suffices to say there is no evidence tending to prove the notes were accepted as payment and the law does not presume such intention. The debt was due on a bond. The notes were simple contracts, inferior in legal standing. Hence, the presumption would be the other way. When the debtor gives his own obligation, carrying a higher remedy than that incident to the instrument by which the debt was originally evidenced, there is a presumption of intent to merge or extinguish the latter, but, if the security subsequently given is no higher than the original, or, though higher, is the obligation of a third party, there is no such presumption. *United States* v. *Lyman,* 1 Mason (U. S.) 481, 505; *Banorgee* v. *Hovey,* 5 Mass. 11, 25; 29 Cyc. 1135, 1136; 20 Am. & Eng. Ency. Law 598; 21 Am. & Eng. Ency. Law 676.

An expression, used in the bill, is relied upon in argument,

as admitting or charging that the notes were given and received in payment and satisfaction *pro tanto* of the amount due on the bond, and so making them payments for the purposes of this case whether in fact they were or not. The clause referred to says Barrett "undertook for the payment of said balance so found due to be paid in installments. And for the purpose and in an endeavor so to provide for the payment thereof, the said A. T. Barrett from time to time gave said J. L. Buckley" the notes. This does not say they were given and accepted as payments, nor that they should be treated as payments. He endeavored to pay in installments by giving these notes and paying them at maturity. The purpose was not accomplished, because, though given, they were not paid, and, therefore, did not satisfy the debt. We think there is nothing in this contention.

Our construction of the assignment answers the complaint founded upon the overruling of the motion to require the plaintiff to elect whether he would proceed with this suit or an action at law for the enforcement of the same demand, instituted by Buckley for his benefit. Such election will be required only in cases of concurrent jurisdiction, or two or more remedies in the same court. Before there can be a right of election as to remedy, there must be more than one remedy available. Here there was but one, namely, a suit in equity, because the assignment carried only part of the debt and had not been assented to by the debtor, so far as the record discloses. The correctness of this conclusion is made apparent by the definition of the terms, "Election of Remedies." 7 Ency. Pl. & Pr. 361; Bouv. Law Dic.; *Sangster* v. *Com.*, 17 Grat. 124; *Williamson* v. *Paxton,* 18 Grat. 504.

Rector never answered the bill which sets forth the amount due him and prays a decree in his favor. By failing to do so, it was taken for confessed, that is to say, he admitted the money was due him and manifested willingness and desire that it be decreed to him in this cause. What more could he have done by an answer? The relief granted him is predicated on the bill, not on extraneous matter, growing out of the transaction set forth in the bill, and proper for a cross-bill. The principles declared in *Kanawha Lodge* v. *Swann,* 37 W.

Va. 176, *Goff* v. *Price*, 42 W. Va. 384, and *Turner* v. *Stewart*, 51 W. Va. 493, are not applicable, for the reason that the relief here given is based on sufficient matter in the bill, and no answer, praying affirmative relief was necessary. Where a case is made out between co-defendants by evidence arising from pleadings between the complainants and defendants, a court of equity should render a decree between co-defendants. *Worthington* v. *Staunton*, 16 W. Va. 208; *Roots et al* v. *Mason City K. M. Co.*, 27 W. Va. 483; *Burlew* v. *Quarrier*, 16 W. Va. 108. We think this law fits the case in hand. It also disposes of the contention that no decree could be taken in favor of Blackshire because he took out no process on his answer, repeating the allegations of the bill and joining in its prayer for relief.

Insufficiency of evidence to warrant the finding of the commissioner, as to the amount of the Barrett debt, is insisted upon in the argument, the contention being founded upon lack of proof of collection of all the taxes and fee bills placed in the hands of the deputy and the disclosure that, in the settlement of Barrett's estate in the bankruptcy court, some tax receipts were sold. What has already been said concerning the scope of the bill applies here. It does not appear. that the receipts sold were collectible, and, even if it did, Buckley was in no way responsible for their loss by sale in the bankruptcy proceeding. Buckley was under no duty to take and collect any uncollected taxes remaining in the hands of his defaulting deputy, if we could see that he had such taxes when they settled in October, 1900. Barrett had contracted to do that himself and these sureties had guaranteed the performance of that duty. The bond would have afforded the sheriff little protection, if his sureties could come in after the taxes had become old and uncollectible or difficult of collection, and make him take them out of the hands of the deputy and become responsible for them himself. The only duty Buckley owed the sureties was abstention from acts of fraud or bad faith toward them. 27 A. & E. Enc. Law 511. In *Eyre* v. *Everett*, 2 Russ. 381, Lord Eldon said: "The surety has no right to say that he is discharged from the debt * * * if all that he rests upon is the passive conduct of the credi-

tor in not suing. He must himself use diligence and take such effectual means as will enable him to call on the creditor either to sue or to give him, the surety, the means of suing."

The decree ascertained the amount due as of February 1, 1893, and allowed interest on the same from that date. It is said there is no proof of a settlement on that date. There is a paper dated October 1, 1900, signed by Barrett and Buckley, stating an account, showing a balance as of that date and the addition of interest, and independently of this statement, evidence proves the amount decreed was due on that date. Therefore, it seems rather immaterial whether a settlement was then actually made. That the books show a credit of $570.00 as of October 1, 1900, in order to make the balance due, as of February 1, 1893, what the court decreed it to be on that date, is not, in any sense, prejudicial to the appellant. It makes the interest less than it would otherwise have been. The assignment is not well taken.

D. E. Leach to whom the decree gives the residue of the Barrett debt, held by Buckley at the date of the institution of the suit, not having been made a party to the cause, an assignment of error is predicated on this feature of it. Buckley assigned his interest to Leach *pendente lite.* Hence the latter is as effectually bound by the decree as Buckley himself. *Harmon* v. *Byram's Adm'r,* 11 W. Va. 511; *White* v. *Perry,* 14 W. Va. 66; *Zane* v. *Fink,* 18 W. Va. 693; *Stout* v. *Philippi,* 41 W. Va. 339; *Shumate* v. *Crockett,* 43 W. Va. 491. If he had purchased Buckley's interest before the institution of the suit, a decree in his favor would have been erroneous. *Snider* v. *Brown,* 3 W. Va. 143; *Bailey's Adm'r.* v. *Robinson,* 1 Grat. 4.

Perceiving no error in the decree, complained of, we affirm it.

*Affirmed.*