# CHARLESTON.

CHAPMAN *et al v.* BRANCH *et al.*

Submitted June 12, 1912. Decided February 28, 1913.

1. JUDICIAL SALES—*Rights of Purchasers—Reversal or Vacation of Decree.*

    The title of an immediate purchaser, or of a remote purchaser, not parties, cannot be disturbed or affected by reversal on appeal, or on setting aside of a decree of sale, for mere error therein not going to the jurisdiction of the court. (p. 58).

2. INFANTS—*Purchases at Judicial Sales—Reversal or Vacation of Decree.*

    This rule is applicable to infants as well as adults, proceeding by *prochein ami* before majority, as in proper person after majority, either under section 7, chapter 132, Code 1906, or by motion, original bill or bill of review to set aside such decree. (p. 58).

3. SAME—*Actions—Misnomer.*

    Where in a suit by an administrator to sell a decedent's land to pay debts, one or more of the infant defendants are misnamed in the process or bill, but the correct name elsewhere appears in the record, by deposition or affidavit, the error in process or bill is correctible by the record. (p. 59).

4. SAME.

    If in such suit the answer of the guardian *ad litem* for infant defendants contains the same error in the name of an infant defendant, such error will not deprive the court of jurisdiction to decree sale of the land proceeded against. (p. 59).

5. SAME—*Actions—Guardian Ad Litem—Appointment.*

    Errors and irregularities in the appointment of a guardian *ad litem*, or in his answer filed, where no statute controls,

will not deprive the court of its jurisdiction to pronounce decree. (pp. 59, 60).

6. EXECUTORS AND ADMINISTRATORS—*Sales Under Order of Court—Conveyance—Property Excluded.*

If in a suit to subject a decedent's lands to sale to pay his debts the court by its decree authorizes the commissioner appointed to sell, to first offer the mineral and mineral rights in the land, and if these do not bring sufficient to pay the debts, then to sell the whole estate in the land, and the commissioner so advertises and sells such mineral and mineral rights for sufficient to pay the debts, the court on his report is without jurisdiction by subsequent decree of confirmation, the question not being therein otherwise presented or litigated, to include in such sale property and property rights not sold, and such decree and the deed of the commissioner to the purchaser to the extent of such property and property rights are void and confer no title on the purchaser, as against infant heirs and defendants, and in a·suit subsequently brought by them showing cause against such decree and deed, the same and all subsequent deeds may be removed as clouds on their title to the property and property rights not sold. (p. 60).

7. SAME—*Sales Under Order of Court—Conclusiveness of Decree.*

If in such suit to sell a decedent's lands one not a party, or mentioned in the bill, and against whom no relief is sought, claiming to be assignee of an alleged oral contract of sale by decedent to another of a part of his land, intervenes by petition setting up such oral contract, praying for specific execution, and for deed, but not making parties thereto, and without process thereon, the court is without jurisdiction to decree specific performance of such alleged contract against infant heirs and defendants not parties and for whom no appearance or ·defense is made, and such decree and the deed of the commissioner appointed to convey such land to petitioner is void, and in a suit by such infants subsequently brought showing cause against such decree and deed the same and all subsequent deeds may be set aside and removed as clouds on the title of such infants. (p. 65).

(ROBINSON. JUDGE, dissenting).

Appeal from Circuit Court, Lincoln County.

Bill in equity by Lena Chapman and others against J. R. Branch and others. From a decree for defendants, plaintiffs appeal.

*Reversed in part. Affirmed in part. Remanded.*

72 W. Va.

*E. T. England* and *J. B. Ellison,* for appellants.
*Enslow, Fitzpatrick, Alderson & Baker,* for appellees.

MILLER, JUDGE:

Plaintiffs, Garnett Ellis, (nee Chapman), and Lena Chapman, adults at the time of suit, Rodolph Chapman, then an infant, but now also an adult, and Leslie, Gracie, and Elisha Chapman, then and now infants, all children and heirs at law of E. M. Chapman, deceased, and Olivia Chapman, his wife, said infants suing by Garnett Ellis, their next friend, on February 1, 1909, brought this suit against J. R. Branch, Branchland Coal Company, and others, seeking upon several grounds to set aside, annul and remove as alleged clouds on their title to a tract of one hundred and twenty-nine acres, and a half undivided interest in a tract of one hundred and thirteen acres of land in Lincoln county, certain decrees and orders and deeds made pursuant thereto, pronounced in a certain other suit, instituted by the said Olivia Chapman, as administratrix of their father, E. M. Chapman, against them or some of them, then all infants, and others, on September 25, 1899, to sell said lands to pay the debts of said decedent because of alleged deficiency of personal assets.

The process in the suit of said administratrix recited the names of all the infant defendants correctly, except Garnett; in her stead M. J. Chapman is named. In the bill all are impleaded correctly except Garnett and Elisha; in their places M. J. Chapman and Eliza Chapman are named. And the guardian *ad litem* answered for those named in the bill, and no answer was otherwise made for Garnett and Elisha.

The decrees of sale and confirmation of the mineral and mineral rights under the 129 acre tract complained of were pronounced on April 13, 1900, and August 22, 1900, respectively; and the decree made on petition of Johnson Ferguson, adjudging him entitled to said half undivided interest of said E. M. Chapman, in said 113 acre tract, and directing a deed to be made to him therefor, was also pronounced on April 13, 1900.

The grounds for relief alleged, briefly stated, are: First, that neither Garnett, nor Elisha were ever made parties to the suit, or bill, and never appeared, and that both remained infants during the whole progress of the suit; that D. E. Wilkinson, ap-

pointed guardian *ad litem*, was a defendant, a creditor, and so interested as to render him an incompetent person to represent them, and that the court therefore never acquired jurisdiction to pronounce the decrees against them; second, that though the decree authorized sale of 129 acres in fee, if the mineral rights would not sell for sufficient to pay debts, yet only mineral rights were advertised and sold; but that in the decree of confirmation along with the mineral rights sold, the court undertook to confirm and the commissioner appointed to convey timber, building rights and other surface rights not sold, leaving plaintiffs, as owners of the surface, absolutely at the mercy of the purchaser of the mineral rights; third, that though E. M. Chapman, at his decease, was owner of said half undivided interest in the 113 acre tract, the court by one of the decrees complained of, on mere *ex parte* petition of Johnson Ferguson, without process, notice, or other proceedings against plaintiff and without appearance, on one and the same day allowed said petition to be filed, and decreed petitioner entitled to that interest, and appointed a commissioner to convey him the legal title thereto, in violation of the statute of frauds, of the rights of plaintiffs, and of all proper rules of procedure, and without having acquired jurisdiction to do so; fourth, that said sale was decreed, without giving the administratrix and heirs at law or some one for them, a day to pay the debts decreed; fifth, that the mineral and mineral rights were sold for a grossly inadequate price; sixth, that it was error to decree a sale of said land before assigning dower to the widow.

The bill shows that the lands and mineral interests in controversy and so affected by said decrees have come by sundry *mesne* conveyances to the possession and ownership of the defendant Branchland Coal Company; that its immediate predecessor, the Lincoln Coal Company, in 1901, took possession of said lands, especially the 129 acre tract, and immediately began cutting timber, building tram roads, and opening up coal mines; that it took possession of the whole of the land fronting on the river, about forty acres, and built houses thereon, also of the land on Four Mile Creek, for the distance of about one fourth of a mile, cut large ditches therein, built roads, and continued these operations for some time, until

the Branchland Coal Company took charge and continued
said operations; and that the whole of the merchantable
timber has been cut from the land and used in building
houses, barns and other buildings, and for cross ties and
timber in its coal mines, and that the larger portion of the coal
under this land has been mined and shipped away; that taken
from the 129 acres being valued at $15,000.00; and the one-half
of that taken from the 113 acres is estimated at $2,500.00, for
which and for other rents and profits, plaintiffs alleged they are
entitled to an accounting with defendants.

The purchaser, Smith, of the mineral and mining rights under
the 129 acre tract, was a stranger to the suit, and so far as the
record discloses was not otherwise interested; and the answers
of J. R. Branch and Branchland Coal Company, putting in is-
sue all the material allegations of the bill, shows respondents to
have been remote and innocent purchasers, without notice, other-
wise than by what is disclosed by the record of the cause, of any
infirmities in the title, and this fact is not controverted.

We think it settled law in this State, that the title of an imme-
diate purchaser, and of remote purchasers, not parties under a
judicial decree, cannot be disturbed or affected by reversal on
appeal, or on setting aside of a decree of sale for mere error there-
in, not going to the jurisdiction of the court, and that Smith
and those holding under him are now protected by section 8, chap-
ter 132, Code 1906. *Sinnett* v. *Cralle's Admr.*, 4 W. Va. 600;
*Martin* v. *Smith*, 25 W. Va. 579, 586; *Dunfee* v. *Childs*, 45 W.
Va. 165; *Stewart* v. *Tennant*, 52 W. Va. 560, 7 syl.; *Perkins* v.
*Pfalzgraff*, 60 W. Va. 121; *Hansford* v. *Tate*, 61 W. Va. 207.
The reasons for this rule and the legal principles underlying it
are sufficiently covered by the opinions in the cases cited, and
particularly in the cases of *Dunfee* v. *Childs* and *Perkins* v.
*Pfalzgraff, supra,* and we need not reiterate them. These cases
or some of them apply this rule to infants as well as adults pro-
ceeding by *prochein ami* before majority, as they may, *Poling* v.
*Poling,* 61 W. Va. 78, *Seymour* v. *Alkire,* 47 W. Va. 302, 305,
and cases cited, or in proper person after disability removed
either under section 7, chapter 132, Code, or by motion, original
bill or bill of review to set aside such decree of sale.

It is quite apparent that the fourth, fifth and sixth grounds

for relief relied on fall within this rule, and that no reversal of the decree of sale for alleged errors therein will entitle plaintiffs to any relief against the immediate purchaser Smith, or any subsequent grantee, and particularly respondents Branch, and Branchland Coal Company, and that as to them this question is a closed one.

Next, and with reference to this rule, let us consider the other grounds for relief. First, as to Garnett and Elisha Chapman. Did the court acquire jurisdiction to sell their interests in the land purchased by Smith? Four of the six plaintiffs, infant defendants in the former suit, were properly named in the summons, but two, Garnett and Elisha, were not named in the bill, otherwise than as M. J. and Eliza Chapman. Wilkinson was appointed guardian *ad litem* for the infant defendants, by the names designated in the bill, and so answered for them. No other answer appears to have been filed for Garnett or Elisha, and they were not served with process and did not otherwise appear. But their mother, the plaintiff and administratrix was examined as a witness in the cause, and gave the names of all these infant defendants correctly. Their true names were thus made to appear on the record, whereby the error in process and bill could, on motion, have been corrected, certainly if the right party has been served, or, as in this case, where no process was necessary. 1 Daniell Ch. Pl. and Pr. 430; Section 13, chapter 125, Code 1906; *Ferrell* v. *Ferrell,* 53 W. Va. 515. As was the case in *Alexander v. Davis,* 42 W. Va. 465, a decree in the cause recites filing of the answer of the guardian *ad litem,* but no answer is found in the record. It was held that the recital of the decree was not conclusive, the certificate of the clerk making no allusion to the absence of the answer. The decree in that case was not treated as void, but voidable only, entitling the infant defendants, within six months after reaching their majority, to show good cause for setting it aside; but it was not intimated that because of the absence of the answer there was lack of jurisdiction to pronounce the decree complained of. It was regarded as error only. And so with respect to decrees in *McDonald* v. *McDonald,* 3 W. Va. 676, *Myers* v. *Myers,* 6 W. Va. 369, and *Roberts* v. *Stanton,* 2 Munf. (Va.) 129.

We find that in most jurisdictions, in practically all, except where controlled by statute, the omission to appoint a guardian *ad litem,* or irregularities therein, are not regarded as jurisdictional, but amount to reversible error only, not going to the jurisdiction of the court. 22 Cyc. 641; 15 Am. & Eng. Ency. Law, 9, and case cited in notes. We have examined most of these cases and find them supporting the text. Examples of those cases controlled by statute, and *per contra,* are *Dohms* v. *Mann,* (Iowa) 39 N. W. 823, 825; *Roche* v. *Waters,* (Md.) 18 Atl. 866; *Brown* v. *Sceggell,* 22 N. H. (2 Fost.) 548. Apropos to this discussion we held in *Boal* v. *Wood,* 70 W. Va. 383, that "Where the court once legally acquires jurisdiction of an unborn heir by representation through living heirs of the same class, its subsequent birth without thereafter being made a direct party to the cause does not divest the court of jurisdiction to decree against it, though to do so is error."

But it is said, that as Wilkinson was a defendant and interested and antagonistic, his appointment as guardian *ad litem* for the infant defendants was illegal, rendering the decree of sale void, not merely voidable. For this proposition appellants rely on *Plant* v. *Humphries,* 66 W. Va. 88. But it does not support the proposition. That case simply holds that if a guardian *ad litem* purchase at a sale the infant's coal the sale will be voidable not void. No such question is here involved.

While these errors relating to misnomers, want of a proper guardian *ad litem,* and a proper answer by him, may amount to reversible error, we do not think them jurisdictional, so as to deprive purchasers of the protection of section 8, chapter 132, Code 1906, defeating their title.

As to the second ground of relief, relating to mineral rights and larger interests in the surface, including timber rights, than the decree of sale authorized, or the commissioner, appointed to make the sale, advertised or undertook to sell, given the purchaser by the decree of confirmation, a more serious question is presented. In *Core* v. *Strickler,* 24 W. Va. 689, it was held, that a sale by a commissioner not previously authorized to make it, after confirmation, was not void, but a mere irregularity which was cured by the decree of confirmation, and not reversible error on bill of review. And in *Castleman* v. *Castleman,* 67 W. Va.

407, we decided that a sale by a commissioner of land by the acre, not so authorized by the decree of sale, was not void, but a mere irregularity likewise cured by confirmation. But those cases do not cover the exact point now presented. They involve no error covered by the decree of confirmation. The decree of sale in this case authorizes the commissioner appointed to sell, to first offer the mineral and mineral rights in the land, and if these do not bring sufficient to pay the debts, then to sell the whole estate in the land. Sale of the minerals under such a decree would undoubtedly include reasonable mineral rights, adequate to enable the purchaser to mine and take out the coal and other minerals. We so held, in effect, in *Armstrong* v. *Coal Co.,* 67 W. Va. 589. If the commissioner had advertised the sale of the minerals and mineral rights and other rights as described in the decree, and the court had confirmed the sale thus made, *Castleman* v. *Castleman, supra,* would be applicable. The notice or advertisement of the sale we do not find in the record. The bill alleges that the special commissioner "advertised the mineral, mineral rights and privileges," and it concedes that if reasonable rights only had been included in the decree of confirmation and deed of the commissioner, there would be no error; but it is alleged that without previous advertisement and sale these larger surface rights, with all the timber, and other rights not so advertised and sold were by the decree of confirmation and the deed of the commissioner, erroneously invested in the purchaser. Is this error in the decree of confirmation jurisdictional and not covered by section 8, chapter 132, Code? The question is a close one, but we are persuaded to answer in the affirmative. In some jurisdictions as formerly in Wisconsin and Michigan, where sales of decedent's lands to pay debts are authorized on mere license granted an administrator, the proceeding to obtain license is regarded as one *in rem* rather than *in personam.* And such being the character of the proceeding, the court having taken jurisdiction of the rem, errors or defects in the proceedings are not treated as jurisdictional, voiding the title of purchaser. *Grignon* v. *Astor,* 2 How. 319; *Mohr* v. *Manierre,* 101 U. S. 417. In the former case, Judge Baldwin, at page 339, says: "As the jurisdiction of such courts is irrespective of the parties in interest, our inquiry in this case is whether the County Court of

Brown County had power to act in the estate of Peter Grignon, on the petition of the administrator under the law of Michigan, providing that where the goods and chattels of a decedent are not sufficient to answer his just debts, on representation thereof, and the same being made to appear to the County Court where he dwelt, or where his real estate lies, it may license the executor or administrator to make sale of so much as will satisfy the debts and legacies. No other requisites to the jurisdiction of the County Court are prescribed than the death of Grignon, the insufficiency of his personal estate to pay his debts, and a representation thereof to the County Court where he dwelt or his real estate was situate, making these facts appear to the Court. Their decision was the exercise of jurisdiction, which was conferred by the representation; for whenever that was before the court, they must hear and determine whether it was true or not; it was a subject on which there might be judicial action."

But in this State by statute a suit whether by administrator or creditor to sell a decedent's lands to pay his debts is *in personam* as well as *in rem*. Section 7, chapter 86, Code 1906, requires that the widow, heirs, and devisees, if any, and all known creditors of decedent shall be made defendants, and the rights of all parties, infants and adults, must be protected by proper process and decree. Jurisdiction of the person as well as of the property must be acquired, to sell and to give good title to purchasers.

The troublesome question we have here is, did the court have jurisdiction by decree of confirmation to invest in the purchaser title to property not sold, or offered for sale, or authorized to be sold, except on condition that that offered for sale and reported as sold by the commissioner would not sell for sufficient to pay decedent's debts? If the mineral and mineral rights sold and authorized to be sold brought a sufficient amount, as they did, to pay the debts, the decree gave no authority to the commissioner to sell other or additional property and property rights, and the commissioner was therefore without authority under the decree to sell more, and the court, we think must be regarded as having been without jurisdiction to confirm to the purchaser other property or greater rights and interests therein than was sold or authorized to be sold. The purchaser was en-

titled only to the property actually purchased, and the court by confirmation could not confer upon him title to property or property interests not purchased and not authorized to be sold except upon a condition, which did not happen.

We have high authority for holding that an order confirming a sale of property not authorized to be sold by the decree or order of sale is void and inoperative. Freeman on Void Judicial Sales, (3rd ed.) section 44. In *M. & M. R. R. Co.* v. *Soutter,* 2 Wall. 609, it was held that a sale by a marshal, unauthorized by decree, is a nullity. The question in that case was whether certain rolling stock of a railroad company was decreed, and included in the sale by the master. Apropos to this case the court says: "Upon principle, the question is by no means free from difficulty. We are clear that a sale without a decree to sustain it would be a nullity, and we doubt if a court can make it valid by a mere general order of confirmation. If, however, an issue had been made by exceptions or other proper pleading, as to the question whether any particular piece of property had been included in the decree, or order of sale, and the court had decided that it was so included, it might be an adjudication upon the construction of the decree which would bind the parties. Nothing of the kind occurred here. There is every reason, on the contrary, to believe, that the court had no suspicion that the Marshal had sold more than the decree authorized." As in that case so in this, no exceptions to the commissioner's report raised or perhaps could have raised on the report as made any issue as to the right of the purchaser to other property or larger interests in property than were actually sold and reported as sold. There was therefore no valid adjudication of the rights of the purchaser to the additional property and property rights and interests covered by the decree of confirmation. It was the duty of the court to have guarded carefully the rights of the infant defendants and to have seen to it that no injustice or injury was done them.

The purchaser's right to the additional property and property rights not having been adjudicated and the error appearing in the decree of confirmation, we think the court was without jurisdiction to confer title to the additional property and property rights on the purchaser. It was held in *Dunfee* v. *Childs, supra,* that error in a decree of confirmation is not covered by the stat-

ute, and a purchaser is not protected thereby. Pertinent is the case of *Hilleary & Johnson* v. *Thompson,* 11 W. Va. 113. One of the questions in that case was whether or not the growing crop on the land was sold with it, and it was held that under the circumstances surrounding that case, and in view of the misunderstanding at the sale, the conduct of the auctioneer, and the inadequacy of the price bid, along with the consideration, that a court in acting upon a report of sale, does not exercise an arbitrary but a sound legal discretion in the interest of fairness and prudence, and with a just regard to the rights of all concerned, the sale was illegal and void. That case it is true was decided upon appeal, the decree below being reversed for the error and the cause remanded.

In *Shriver* v. *Lynn,* 2 How. 43, more land was sold than was decreed or the court had jurisdiction to sell, but after the sale the court undertook to confirm it. At page 59, it is said: "Does the ratification of the sale bring it within the rule, which applies to a case where the court has jurisdiction, but has committed errors in its proceedings. Had the court jurisdiction of the tract of land in controversy?" The answer given at page 60, is, "No court, however great may be its dignity, can arrogate to itself the power of disposing of real estate without the forms of law. It must obtain jurisdiction of the thing in a legal mode. A decree without notice, would be treated as a nullity. And so must a sale of land be treated, which has been made without an order or decree of the court, though it may have ratified the sale. The statute under which the proceeding was had requires a decree; at least such has been its uniform construction." In *Townsend* v. *Tallant,* (Cal.) 91 Am. Dec. 621, it is said: "But if the order of sale was *coram non judice,* then the 'sale' was no sale, and it could not be made valid and binding by any number of so-called confirmations." In *Bethel* v. *Bethel,* 69 Ky. 65, it is held, that a sale of land is void when not made in pursuance of a decree, and that no invalid sale can be sanctified by a mere confirmation of a commissioner's report. In that case the first decree authorized the commissioner to sell land in parcels, limiting the price per acre. The sale made was under a second decree at another term, authorizing a sale of the whole of the land, and without restriction as to price. The sale was held

void. In *Campbell* v. *Clay, Id.* 500, the statute required the commissioners to report certain facts, as a condition of selling infants' lands. The report was not strictly in accordance with the requirements of the statute. The statute not having been complied with the decree and sale were held void. See, also, Rorer on Judicial Sales, (2nd ed.) sections 53, 56, and 499.

Upon the principles of these authorities, we hold, that the decree of confirmation in this case in so far as it undertook to confirm to the purchaser property. and property rights other than what were sold and reported by the commissioner is absolutely void, and that the purchaser by the decree of confirmation took no title thereto as against the infant defendants, plaintiffs in this suit. Those rights which we think should be eliminated from the decree of confirmation and the deed of the commissioner, consist in the right confirmed to erect coke ovens and manufacture coke; the right to erect and maintain buildings on said land, other than those necessary to conveniently remove the coal and the other minerals sold and conveyed; the right to take any of the timber therefrom, for any purpose; rights of way over and upon said land, for general railroad purposes; the right to erect and maintain store houses or other improvements thereon, not necessary for the convenient mining and removal of coal and other mineral substances fairly included within the mineral rights sold and purchased by the purchaser. In so far as such property and property rights and interests were by the said decree of confirmation confirmed to the purchaser, we hold it to be void and that it should be set aside, reversed and annulled, and that defendants should be required to account to plaintiffs therefor, and for the use and occupation of said lands, not legally authorized, and for the property and property rights taken which were not sold and purchased under the decree of sale.

And lastly, as to the decree on the petition of Johnson Ferguson. The petitioner was not a party to the suit. There was no mention of him in the bill, nor of the land claimed by him, nor after his intervention was the bill amended. The petitioner simply intervened by his petition, and the order filing it made him a party, whether plaintiff or defendant the decree does not say. He set up an oral contract for the sale of land, of which

he alleged he was assignee. The petition alleges that one Midkiff was the purchaser, and that after his alleged purchase in the fall of 1898, he moved on the land and built a small log house; that Chapman was to make him a deed the following spring, but died in the meantime and never had done so. Petitioner concedes that nothing was paid by the purchaser until after the death of decedent, when the contract price, $50.00, was paid to the administratrix, the wife. The legal title to this land on the death of Chapman descended to his infant heirs. The petition made no one a party to it; did not pray for process, and no opportunity was given to defend the petition, not even the guardian *ad litem* answered or was required to answer, or made any defense. The bill in this case pleads the statute of frauds, and want of jurisdiction in the court to decree the land to the petitioner, or to dismiss it out of the suit. These defenses would have been available to plaintiffs if they had been adults. In *Glade Mining Co.* v. *Harris,* 65 W. Va. 152, we held it to be the duty of the court to protect the interests of infant litigants, and that this rule is applicable to appellate courts, and that on appeal an infant will be given the benefit of every defense of which he could have availed himself or which might have been interposed for him in the trial court. This is not literally an appeal from that decree, but it is a suit by infants showing cause against it. But the particular question presented for decision now is, had the court jurisdiction of the parties to pronounce the decree? As there was no issue between plaintiff and petitioner presented by the bill, and the petition did not make parties thereto, the decree pronounced in favor of the petitioner without process we think was utterly void. To confer jurisdiction it is necessary to have pleadings presenting an issue to be tried, and also to have jurisdiction of the person by process or appearance. Many decisions say that where a case is made out between co-defendants by evidence arising from pleadings between complainant and defendant a court of equity may and should render a decree between the co-defendants, but that when there are no such pleadings a court of equity cannot render a decree between co-defendants. 8 Enc. Dig. Va. & W. Va. Rep. 286, and many cases cited. We do not think it can be properly said that a case was made out between the petitioner and the

infant defendants on the pleadings between plaintiffs and defendants in the original suit.

Treating the petition of Ferguson as an answer seeking affirmative relief, the rule of *Turner* v. *Stewart,* 51 W. Va. 493, syllabus 15, is applicable. That rule is that where an answer is not intended for defense only, but to affect the rights of a co-defendant, it must make him a party and call for relief against him upon its facts, as in case of a cross bill, and the process to answer it must be served upon defendant. *Goff* v. *Price,* 42 W. Va. 384; *Kanawha Lodge* v. *Swann,* 37 W. Va. 176. See, *Dudley* v. *Barrett,* 66 W. Va. 363, 372, and *Dudley* v. *Buckley,* 68 W. Va. 630, 647, affirming the same proposition.

Therefore, for want of jurisdiction of the subject matter and of the parties, and for want of pleading and process, we are of opinion that the court in the original suit and the decree therein was wholly without jurisdiction to pronounce decree in favor of Ferguson. and that the decree in his favor is utterly void, and that it and the deed therefor by the commissioner should be set aside and removed as a cloud upon the title of plaintiffs and appellants.

The decree below will, therefore, be reversed in the particulars herein indicated, but affirmed in all other respects, and the cause will be remanded to the circuit court for further proceedings to be and therein in accordance with the principles herein enunciated and further according to rules governing courts of equity.

*Reversed in part. Affirmed in part. Remanded.*

ROBINSON, JUDGE, *(dissenting)* :

Point 6 of the syllabus does not meet my approval. Where a court has obtained jurisdiction of the parties and the subject matter of the suit, that which it may improperly do in relation to them is error, but not total invalidity. The court in confirming the sale, since by process and pleading it had obtained jurisdiction of the parties and the land, had the power to construe its decree of sale as to what mineral or mining rights were meant to be sold, though it may have acted ever so erroneously or improperly.