[No. 9211. Department Two. August 11, 1911.]

REBECCA A. PRINCE, *Respondent,* v. CHARLES A. PRINCE, *Appellant.*[1]

WILLS—CONTRACTS TO DEVISE—MUTUAL WILLS—REVOCATION—ESTOPPEL TO REPUDIATE—HUSBAND AND WIFE—COMMUNITY PROPERTY—ELECTION TO TAKE UNDER WILL—EVIDENCE—SUFFICIENCY. The intention of the parties to make provision for their children, with all the aspects of a contract which is irrevocable by the survivor after the death of the other, is clearly shown, and the widow makes an election which she cannot subsequently repudiate by claiming a community interest in lands devised by mutual wills to their children, where it appears that husband and wife, following a policy to advance $1,000 to each of their children, there being three minors still unprovided for, executed mutual wills devising to two minor sons specified tracts of community property, each charged with the payment of $500 to a minor daughter, that wills instead of deeds were made on the advice of an attorney because of the minority of the sons and their supposed inability to contract for

[1]Reported in 117 Pac. 255.

the charges thereon, and that, at the same time, a deed of property was made to another child, and a writing signed by the heirs, releasing all claims to the estate in consideration of the advances; and where, on the death of the husband, the widow offered his will for probate and accepted the benefits of devises to her of portions of the husband's separate and community lands, and bequests of personal property, which she converted to her own use.

EVIDENCE—JUDICIAL NOTICE. The courts will take judicial notice of the practice of spouses in this state to make mutual wills of community property.

APPEAL—PRESERVATION OF GROUNDS — EXCEPTIONS — SUFFICIENCY. A general exception to a specific finding is sufficient without any specification of the reasons therefor.

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered April 11, 1910, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action for partition. Reversed.

*B. H. Rhodes* and *Troy & Sturdevant*, for appellant.

*G. C. Israel*, for respondent.

CHADWICK, J.—Jonathan D. Prince and Rebecca Prince were married in the year 1872, and to them seven children were born. At the time of his marriage, the husband had eighty acres of land which he had bought of his brother William, or it may be that it had been given to him; at any rate, he never paid, nor does the record show that demand was ever made upon him for the payment of, the purchase price. Upon this eighty acres they lived together until April, 1906, when Jonathan D. Prince died. The Princes had been thrifty in a way, and had accumulated other pieces and parcels of land besides accumulating, as the court found, something like $5,000 in improvements or betterments to the home place. When Mr. Prince died, the place was apparently stocked with all kinds of farm equipment and machinery necessary to carry on the farm, besides hogs, cattle, horses, etc. The record shows that the father and mother had, from time to

time and as the children became of age, made allowance out of their property by deed or gift, to the extent of about $1,000 in value to each child.

On or about January 8, 1906, Jonathan D. Prince, who was then sick of the malady to which he succumbed, was solicited by the husband of one of the daughters, who up to that time had received no share or dowry, to make a deed to his daughter of what would be her share of the property. This he was willing to do, and we take it that respondent was of like will, for she is not, so far as the record shows, attacking the deed to the daughter in which she joined as grantor with her husband. This left three of the children, Charles Prince, Ralph Prince, and Lelah Prince, all minors, unprovided for. An attorney had been procured at Centralia to draw the deed aforementioned. At the same time, whether upon his advice is not entirely certain, but probably so, Mr. and Mrs. Prince executed wills, alike in form and terms, whereby each gave to Charles and Ralph two several tracts of land, each tract being charged, however, with the payment of $500 to be paid by the devisee to his sister Lelah. After some specific devises and mention of the other children, all of the property remaining, including the home place, was devised to the respondent.

It is the theory and contention of the appellant that the wills were drawn because the two boys, Charles and Ralph, being minors, could not accept a conveyance coupled with a promise to pay the charge in favor of their sister. In other words, their right to contract was questioned. Respondent contends that she at no time intended to part with any of her community interest in the property, and although the question of wills and the interests of the children had been the subject of some strife and even controversy between her husband and herself, she finally signed the will "just to keep peace in the family," intending at the time to "break it." At this point it may be said that two witnesses who appear to be disinterested testify that, the day after the deed was

executed and the wills were drawn, respondent expressed her-
self as well satisfied and pleased that the interests of the
children theretofore unprovided for had been taken care of.

Upon the death of her husband, respondent offered the
will for probate, and it being a nonintervention will, only
such proceedings were had as were deemed necessary to pass
it beyond the claim of creditors and such liability as might be
owing the state under the inheritance tax statutes. Re-
spondent took the rents from all of the land up to the time
this action was begun, excepting that part which was willed
to Charles. This tract was either farmed by Charles or he
collected the rent after becoming of age. The lessee paid the
portion due on Ralph's estate to the respondent, she demand-
ing it because, as he says, "Ralph was not of age." Respond-
ent sold and disposed of all of the personal property and used
the proceeds thereof for her own benefit, and has also in-
cumbered all of the lands of the estate, and has converted the
proceeds thereof. At any rate, no accounting of her trust
was ever filed in the probate court, nor is it tendered in this
action. She insists, however, that she has replaced the per-
sonal property and stock with property of like character
and of equal value. There was some money left at the time
the will was probated. This she says was used to meet living
expenses. In November or December, 1906, respondent
moved off the ranch, and since that time the children, Charles,
Ralph, and Lelah, have received no support from her. A
material circumstance attending the execution of the deed
and wills was the execution of a writing which, although
referred to in the testimony, is not brought to this court. It
was signed by respondent and the heirs, and in it this lan-
guage occurs:

"The undersigned hereof, being the surviving parents,
have all of the estate then existing free from any claim on
our part by reason of the consideration aforesaid."

One of the children in speaking of this instrument says:

"Q. Do you remember that paper? A. Yes. Q. Do you

know how you came to sign it? A. Yes. Q. How was it? A. Well, to fix up the estate; to show that I got my share of the estate there. Q. At whose request was that signed up, do you know? A. Why, father and mother;"

while respondent says:

"Q. Do you remember that? A. Yes. Q. What did you understand from that? A. I understood I should have my share, my half of all of the property. Q. In case of the death of your husband? A. Yes;"

which shows her knowledge of the writing at that time.

In July, 1908, respondent brought this action against her children Ralph and Charles, praying for a partition, upon the theory that her husband had no right to devise to another, even to the children of the parties, any specific interest in the community property, and that she was not put to an election to take under the will for that reason. The defense is that she has elected, and should be bound by the terms of her husband's will. The court found that the original home place was the separate property of Jonathan D. Prince, subject to certain equitable charges in favor of respondent, and in all respects that the prayer of respondent's petition should be sustained. A decree was entered accordingly.

That one spouse cannot devise the property of another by will is a general rule and will require no elucidation. Joint or mutual wills, made upon proper understanding and executed pursuant to a contract or policy designed to settle the probable interests of the testators and looking to the just provision of those having a claim upon their bounty, partake of the nature of a contract and may be specifically enforced (*Edson v. Parsons*, 85 Hun 263, 32 N. Y. Supp. 1036), and in such cases are said to be almost irrevocable without the consent of all the parties. Remsen, Preparation and Contest of Wills, § 6.

"There is no rule of law or policy which stands in the way of parties agreeing between themselves to execute mutual and reciprocal wills, which, though remaining revocable upon

notice being given by either of an intention to revoke, become, upon the death of one, fixed obligations, of which equity will assume the enforcement, if attempted to be impaired by subsequent testamentary provisions on the part of the survivor; but, to invoke the intervention of equity, it is not sufficient that there are wills simultaneously made, and similar in their cross provisions, but the existence of a clear and definite contract must be shown, either by proof of an express agreement, or by unequivocal circumstances." 20 Dec. Dig., p. 937.

In Rood on Wills, § 70, it is said, under the title, "Joint, Double, Mutual, and Simultaneous Wills:"

"Contracts may be joint; for it may be agreed that a joint delivery shall be made by one for all. Therefore, a joint will is an instrument unknown to the law. Yet there is no reason why several persons may not execute the same paper as expressing the disposition of their property, which they desire to have made after their deaths, whether the property thus disposed of be owned by them severally or jointly; and such wills should be and generally have been sustained—not as the joint will of all, but as the several will of each; . . . ."

In principle we cannot distinguish between a single instrument signed by both parties to the contract, and separate instruments alike in kind and character, and intended to effectuate the same purpose. *In re Cawley's Estate*, 136 Pa. 628, 20 Atl. 567, 10 L. R. A. 93. Continuing, the author last cited says:

"But if to the making of the will be added the death of the maker without revoking it, a sufficient valuable consideration is found to bind the other party and his estate, . . ." Rood, Wills, § 72.

If one party to a contract to make mutual or reciprocal wills could not, after the death of the other party, revoke his will, it would seem to follow that he could not elect to take under the statutes of descent, he being defined as an heir by the statute; for the legal effect in each case would be the same—to compel the intestacy of the one first deceased. In

discussing the right to revoke a mutual or reciprocal will, Mr. Underhill says:

"If two testators who have united in the execution of a mutual will have devised their property to each other so that the devises form a mutual consideration, neither, after the death of the other and the probate of the will as to *his property*, is at liberty, after accepting the benefit conferred, to repudiate the contract to the injury of the heirs or next of kin of the testator who predeceased him. The mutual will was made upon condition that the whole shall be but one transaction. If the will is not revoked during the joint lives of the testators, he who dies first has a right to rely upon the promise of the survivor. He has fulfilled *his part* of the agreement, and it is not just to his representatives to permit a revocation when he has been prevented from revoking his will by a reliance upon the other's promise. It is too late for the survivor, after receiving the benefit, to change his mind, because the first will is then irrevocable. It would have been differently framed, or perhaps not made at all, if it had not been for his inducement." Underhill, Law of Wills, p. 20.

"It is a contract between the parties, which cannot be rescinded, but by the consent of both. The first that dies, carries his part of the contract into execution. Will the court afterwards permit the other to break the contract? Certainly not." Lord Camden, *Dufour v. Pereira*, 1 Dick. 419, 21 Eng. Rep. 332.

It is not necessary for us to go to the extent of holding, as a general proposition, that respondent might not have revoked her will, thus implying a revocation of her husband's will, either before his death or thereafter. But mutual wills reciprocal in their nature being sustained in law, the only question open, it seems to us, is whether the proof of the original policy to care for all the children alike, and the agreement to make the wills, is clearly and definitely established. The *right of election or rather repudiation*, in such cases must be measured by the intent of the parties at the time of making the wills, as well as by their subsequent conduct. That the intent of the parties was to provide for the

three minor children, in the same manner and to the same extent as those who had come to their majority, is clearly evidenced. The first concern of the deceased seems to have been to provide for the minor children, the two sons and daughter, out of the community property. To accomplish this he called an attorney who, because of the minority of the children, advised the making of the wills instead of deeds, and but for this advice of counsel the deeds would have been executed, and this controversy in all probability been avoided.

We have not overlooked the assertion of respondent that she made the will just to keep peace in the family. But she offers no evidence even tending to show that there was any coercion or undue influence. On the contrary, her expressions that she was glad it had been settled, and her repeated declarations in her testimony that she wants the children to have their share, indicate a changed intent rather than a coerced will. Indeed, no reason for coercion appears. The deceased owned the home place as his own, and although the fact that it was his separate property developed on the trial, we must presume that he knew the status of his own property and might, but for the execution of a like will on the part of his wife, have provided for his children out of his separate estate, or out of his share of the community property, even to the whole of it. The fact that the parties gave specific tracts to the children, reserving the home and all personal property for the survivor, in itself shows a mutual and parental regard for the children and a concern for the survivor utterly inconsistent with any intent other than a desire to leave the estate upon the death of one of the spouses as defined in the wills. The circumstances set out in the preliminary part of this opinion—the probate of the will, the conversion and use of the personal property, the conduct of respondent with reference to the use of the devised lands and of the rent therefor—so clearly show her understanding in the matter that to allow her present plea would not only work injustice and inequity, but would put a premium upon

deception between those who, for a sufficient consideration or because of their community interest, execute mutual or reciprocal wills; a condition we are not prepared to sanction, for in this state our community property statutes not only invite, but almost compel, such dispositions of property, and the execution of such instruments has come to be so common that we feel bound to take judicial notice of the custom, and to sustain them if possible.

In *Edson v. Parsons*, 155 N. Y. 555, 566, 50 N. E. 265, it is said:

"I fully concede that there is no reason in law, nor any public policy, which stands in the way of parties agreeing between themselves to execute mutual and reciprocal wills; which, though remaining revocable upon notice being given by either of an intention to revoke, become, upon the death of one, fixed obligations; of which equity will assume the enforcement, if attempted to be impaired by subsequent testamentary provisions on the part of the survivor. The proposition is one which may be regarded as having been accepted generally. (1 Jarman on Wills, * 27; 2 Story's Eq. Jur., § 785; Schouler on Wills, § 454; Lord Walpole's Case, 3 Ves. Jr. 402.) A court of equity would, in such an event, proceed upon the ground that the survivor was bound, not merely in honor, but by his agreement and by the acceptance of the benefit, which that agreement procured for him. In such a case, obviously no remedy at law would be adequate to the party, in whose interest, and for whose ultimate advantage, the testamentary agreement had been entered into. Therefore, equity would perform its high function of supplying the relief, which the rules of law are not sufficiently elastic to comprehend, and recognizing the obligation, which, in conscience and honor, rested upon the surviving party, would decree a specific performance of the testamentary agreement, by compelling those persons into whose possession the property affected may have come, to account for and deliver it over to the complainant, for being impressed with a trust in his favor."

This is quoted in *Baker v. Syfritt*, 147 Iowa 49, 125 N. W. 998, where the court said:

"Coming a step nearer to the case in hand we see no good reason why husband and wife may not agree to unite their separate estates in the creation of a trust for the benefit of a third person, who shall come into the legal title and right of possession upon the death of the survivor. If to that end they execute a joint instrument, clearly expressing their purpose, then, whether it be called a contract, compact, will, or conveyance, we think it should be treated as a relinquishment of dower right, or, at worst, when one maker has died without attempting to revoke it, the other should be held estopped to set up any right which tends in whole or in part to the defeat of the common purpose. A contract is none the less a contract because it contains provisions which are testamentary in character, nor is a will any less a will, if properly executed, because it embodies contractual features. *Carmichael v. Carmichael*, 72 Mich. 76, 40 N. W. 173, 1 L. R. A. 596, 16 Am. St. Rep. 528; *Schneringer v. Schneringer*, 81 Neb. 661, 116 N. W. 491."

In *Deseumeur v. Rondel*, 76 N. J. Eq. 394, 74 Atl. 703, the joint will of a husband and wife was under consideration, and the court in discussing its effect said:

"It may be that during the lifetime of both Alexander and Elizabeth Bisson either could have rescinded this agreement —call it a will, or call it a contract, or an instrument of proof tending to prove a contract. But I am clearly of opinion that whatever name should be properly used to characterize this paper, it proves, or tends to prove, an agreement between the parties signing it to dispose of their property in a certain way which a court will enforce if made upon legal consideration, and if it be true and proven that at the time the paper was executed, and at the time of the death of Alexander he was possessed of personal property or real estate which was taken over and used by Elizabeth, his wife, by virtue of the probate of this paper as his will, the agreement thus evidenced has sufficient legal consideration to support it, and the rights under it will be enforced. If, for instance, Alexander was a man of means, and Elizabeth had the four lots which were in her name at the time of the making of the paper on the 20th of June, 1855, and they made this paper, which, as they said, was to make a final settlement respecting their properties, and he died first, and she took under the terms of

this paper which was probated as a will all of his personal property, and either used it (if it were held that under the terms of the probated will she was entitled to do so), or used it for life (if the narrower estate was held to be vested), I cannot believe it possible that any court would thereafter permit her, under these circumstances, to rescind or repudiate her part of the bargain."

Aside from what has gone before, we think respondent should be held to an election. We do not understand that the doctrine that one who accepts a benefit under a will must adopt the whole contents of the instrument or reject it in its entirety, is denied by counsel; but it is asserted, and the lower court must have so held, that the only benefit accepted was the conversion of the personal property which has been replaced in value if not in kind. This position is untenable. The provisions of this will are to be taken *cum onere*, and when once accepted must be held to control. Otherwise, there would be no stability to the law. The status of all demised property would be subject to the vacillation of the devisee, and the will would become the will of the living rather than of the dead. Neither a party nor the court should have the right to say that property can be accepted and put to personal use, and thereafter be replaced in value if it then seems more profitable to do so; for it is the act of acceptance, and not its consequences, which measures the election. We do not want to be understood as holding that a mere offering of a will for probate, and the acceptance of an appointment thereunder as executrix, would in itself defeat respondent's right of election; but this circumstance, when taken in connection with the admitted policy of the parents to make a clear provision for their children, and respondent's acts with reference to the children and the demised estate, may become, and in our judgment has become, of great weight, and must be taken to indicate a furtherance on her part of that policy which, as we have undertaken to show, took upon itself the aspects of a contract at the time the wills were executed.

Respondent relies upon *In re Frey's Estate*, 52 Cal. 658; *Beard v. Knox*, 5 Cal. 252, 63 Am. Dec. 125, and *In re Smith's Estate*, 108 Cal. 115, 40 Pac. 1037. But, admitting that one member of a community cannot so devise the interest of the other spouse in the community property as to put her to an election—and these cases in their essence hold nothing more than this—yet they are not in point as we view the subject of our inquiry. There was nothing in any of these cases indicating that there was a full knowledge of all the facts concerning the property, or such a dealing with it as would estop the claimant. While here, there was no knowledge possessed by one spouse that was not possessed by the other; to which is to be added a mutual intent, evidenced by the wills and by the deed executed at the same time and by the subsequent conduct of the respondent, to carry out the provisions of their mutual writings. In this light, the case of *In re Smith's Estate* sustains our contention, for it is there said:

"Before the widow can be denied her right to elect upon distribution, it must be found that, with the knowledge of her rights by unequivocal acts evidencing her intent, she has so dealt with the property left her by the will that it would be inequitable to permit her to avoid these acts and disclaim her intent."

Respondent has moved to dismiss this appeal, for the reason that appellant has entered his exceptions to each one of the findings of fact, saying that he excepts to the specified finding for the reason that the same is not supported by the evidence and is contrary to the law. It is said that these are general exceptions, and that they come within the rule of that line of cases beginning with *Hannegan v. Roth*, 12 Wash. 65, 40 Pac. 636, holding that a general exception is insufficient, and that the court will not, under such circumstances, inquire beyond the sufficiency of the findings of fact to sustain the decree. We do not agree with counsel. It has never been the purpose or the policy of the court to hold anything other than that exceptions should be in such form as

to indicate to the court the errors relied upon on appeal. An exception may not be taken if directed to all of the findings, but it may be in the same form and directed to a particular finding and meet the requirement of the rule. If the rule were not so, it would be incumbent upon us to define a form for exceptions, and clearly this would be beyond the proper function of this court.

For the reasons assigned in the foregoing opinion, the decree of the lower court is reversed, with instructions to deny the prayer of respondent's complaint, and to enter a decree in favor of the appellant; conditioned, however, that the said Charles A. Prince shall, within ninety days after the remittitur goes down, pay into the registry of the court the amount charged upon his inheritance for the use and benefit, and subject to the order of, Lelah A. Prince.

CROW, ELLIS, and MORRIS, JJ., concur.