[No. 11709.    Department One.    March 5, 1915.]

JESSE PRINCE et al., *Respondents*, v. GEORGE A. MOTTMAN
et al., *Appellants*.[1]

APPEAL—APPEALABLE ORDERS — VACATING JUDGMENT — FINALITY—
PARTIES ENTITLED. The purchaser at a partition sale, who was not
a party to the action, may appeal from an order vacating the judg-
ment and setting aside the sale; as the order was, as to him, a final
judgment, determining his rights in the matter.

GUARDIAN AND WARD—GUARDIAN AD LITEM—DUTIES—NEGLIGENCE
—FAILURE TO MAKE DEFENSE. The evidence is insufficient to show
negligence or bad faith of a guardian *ad litem* in defending an ac-
tion for partition, where it appears that, in a second action between
the same parties, he assumed and vigorously asserted a defense in
line with the decision of the same court between the same parties
which, if successful, would have resulted advantageously for his
wards; and the fact that the first decision relied on by him was sub-
sequently reversed on appeal, and that he did not appeal from an
adverse decision in the second case, does not amount to misconduct
or a failure to discharge his duties.

JUDICIAL SALES—VACATION—RIGHTS OF PURCHASERS—BONA FIDES.
Under Rem. & Bal. Code, § 1742, providing that property acquired by
a purchaser in good faith under a judgment subsequently reversed
shall not be affected by such reversal, a partition sale to purchasers
not parties to the action, who bought on the open market, will not
be vacated because of irregularities or errors which resulted in the
judgment, at the suit of minors who were parties to the action and
represented by a guardian *ad litem*, who failed to appeal from or
supersede the judgment.

JUDICIAL SALES—IRREGULARITIES—NOTICE—CONFIRMATION—EFFECT.
After confirmation of a partition sale, the referee's report and order
of confirmation showing a substantial compliance with the statute
as to notice, objection cannot be made to the notice of sale in that the
name of the newspaper and the day of the week on which the paper
was published was not shown by the report, nor that the last day
of publication was given as November 14th, when from the context
of the report it appears that the same was a clerical error, intended
for December 14th.

JUDICIAL SALES—VACATION — INADEQUACY OF PRICE — EVIDENCE—
SUFFICIENCY. Such inadequacy of price as to avoid a partition sale
is not shown where it appears that, four years previous to the sale,

[1]Reported in 146 Pac. 841.

the land had been appraised at $6,245, that it sold for $8,100 after a
prior sale had been set aside, that the purchaser offered to sur-
render the property for the price bid, with reasonable interest, al-
though witnesses testified that the property was worth $18,000 two
years after the sale, there being no evidence of the value at the
time of the sale.

Appeal from a judgment of the superior court for Thurs-
ton county, Rice, J., entered April 18, 1913, upon findings
in favor of the plaintiffs, in an action to vacate a decree for
the partition of real estate and to set aside a sale made there-
under, tried to the court. Affirmed in part and reversed in
part.

*John M. Wilson* and *A. J. Falknor*, for appellants.

*B. H. Rhodes* and *Troy & Sturdevant*, for respondents.

Crow, J.—Jesse Prince and Harold Prince, minors, by
their general guardian, Ernest F. Prince, instituted this pro-
ceeding in the superior court of Thurston county, by motion
and petition, to vacate a decree for the partition of real
estate and all subsequent proceedings thereunder. The orig-
inal decree was entered on July 11, 1910, in cause No. 3943,
wherein Rebecca A. Prince was plaintiff, and Jesse Prince and
Harold Prince, minors, Frank C. Owings, their guardian *ad
litem*, C. W. Maynard and others were defendants. By the
terms of the decree, it was adjudged that the north half of
the southeast quarter and the southwest quarter of the south-
east quarter of section 4, and the north half of the north half
of the northwest quarter of the northeast quarter of section
9, all in township 15, north of range 1, west, was the joint
property of the plaintiff, Rebecca A. Prince, and the minor
defendants, Jesse Prince and Harold Prince; that one-half
thereof was held by the plaintiff in fee simple and one-fourth
by each of the minor defendants, and that the property could
not be partitioned without injury, but should be sold. The
decree further adjudged that the southeast quarter of the
southeast quarter of said section 4, and the north eighteen

acres of the northeast quarter of the northeast quarter of said section 9, was wholly the estate of the minor defendants, Jesse Prince and Harold Prince, as tenants in common, subject to a lien for $3,400 in favor of Rebecca A. Prince, the nature of which need not be now stated as it is not material to this appeal; that the lands last described were so situated that they were an integral part of the lands first described, and that they should also be sold for the purpose of paying the lien and avoiding loss to the parties. It was further ordered that, after sale of the lands, the proceeds be distributed in accordance with the terms of the decree. C. W. Maynard had been made a party as mortgagee, holding under a mortgage executed by the plaintiff Rebecca A. Prince. The amount due upon his mortgage was ascertained and ordered paid from the proceeds of the sale of the interest adjudged to Rebecca A. Prince. In pursuance of this decree, the lands, on December 17, 1910, were sold by a referee to George A. Mottman for $8,100. The sale was confirmed, and distribution of the proceeds was made, the sum of $1,457.82 being deposited in the registry of the court for the minor defendants as their ascertained interest. This sum has not been withdrawn.

The trial upon which this decree was rendered was had after a trial in the superior court of Thurston county of another and separate action, Prince v. Prince, which was later appealed to this court. The judgment in that case was reversed on August 11, 1911 (64 Wash. 552, 117 Pac. 255). Both causes arose in the same estate and under the will of Jonathan D. Prince, the deceased husband of Rebecca A. Prince, and father of Jesse Prince and Harold Prince. A full statement of the facts pertaining to the estate and the will of Jonathan D. Prince may be found in our opinion in *Prince v. Prince*, 64 Wash. 552, 117 Pac. 255. In brief, it there appeared that Jonathan D. Prince and Rebecca A. Prince, his wife, in pursuance of an agreement between themselves, had executed identical wills; that the will of Jonathan D. Prince

was probated; that Rebecca A. Prince was qualified as executrix, and acted as such for several years; that she then endeavored to exercise an election to take under the law, and not under the will; that in pursuance of such election, she commenced actions in partition against her children, who were legatees under the will; that the trial court held she could make such election, and that its decree was reversed by this court. To avoid confusion in the further statement of this case, we will allude to the action considered in *Prince v. Prince*, 64 Wash. 552, 117 Pac. 255, as the first partition action, and the action in which the decree was vacated in this proceeding as the second partition action.

By the eighth clause of his will, Jonathan D. Prince made the following devise:

"I hereby give, devise, and bequeath to my beloved wife Rebecca A. Prince all of the rest and residue of my property, both real, personal and mixed and wheresoever situate, lying and being, during the term of her natural life, and upon her death then the rest and residue thereof to descend to and vest in my sons Jesse Prince and Harold Prince share and share alike."

The lands in which a life estate was thus devised to Rebecca A. Prince, and which upon her death were to descend to Jesse Prince and Harold Prince, are the identical tracts described in the decree above mentioned, which were directed to be sold, and were sold by a referee to George A. Mottman. Rebecca A. Prince, claiming all these lands to have been the community property of herself and her deceased husband, and claiming the right to take under the law, had commenced the second action to partition the lands, and after trial the decree above mentioned was entered.

After our decision in the first action of *Prince v. Prince*, *supra*, the minor legatees, Jesse Prince and Harold Prince, by Ernest F. Prince, their general guardian, on April 29, 1912, by motion and petition, commenced this proceeding against Rebecca A. Prince, George A. Mottman and June

Mottman, his wife, to vacate the decree from which they had not appealed, and to set aside the sale that had been made to Mottman. In their petition they, in substance, alleged the execution of the identical wills by Jonathan D. Prince and Rebecca A. Prince, his wife, their agreement made at the date of the execution of the wills, the death of Jonathan D. Prince, the probate of his will, the appointment of Rebecca A. Prince as executrix, and other probate proceedings. They further alleged that, after Rebecca A. Prince had squandered the personal property and all the rents, issues, and profits of the real estate, she attempted to elect to take under the law, claiming an undivided one-half interest in the real estate devised to the minors, and commenced the second action of partition; that Frank C. Owings was appointed guardian *ad litem* for the minors; that he did not perform his duties faithfully as guardian *ad litem*, but that by his answer he substantially admitted the allegations of the complaint; that he virtually made no defense on behalf of the minors; that he appeared as attorney for C. W. Maynard, the mortgagee, whose interests were alleged to be adverse to those of the minors; that, by reason of his failure to properly defend on behalf of the minors, the court was induced to make findings and decree against their interests; that George A. Mottman purchased the land for $8,100; that no notice of sale was published by the referee, as required by law; that the sale was confirmed; that the litigation was so manipulated that only $1,457.82 was awarded to the minors; that they have not withdrawn that sum or any part thereof from the registry of the court; that the lands were actually worth $18,000, and that the interest of the minors, subject to the life estate devised to Rebecca A. Prince, was worth $10,500. Upon the trial of the application to vacate the decree, the court made findings in harmony with the allegations of this petition, and entered an order vacating the decree and setting aside the sale to George A. Mottman. From this order, the defendants George A. Mottman and June Mottman, his wife, have ap-

pealed. No appeal has been taken by or on behalf of the defendant Rebecca A. Prince, who, after service of process, failed to appear in the proceeding to vacate the decree.

The respondents have interposed a motion to dismiss the appeal, for the reason that it is based upon an order vacating a judgment and directing a new trial of the case in which the judgment was entered. In support of this motion, they contend that this court has uniformly held that an order vacating a judgment is not appealable, as such vacation leaves the action for further proceedings. That orders vacating judgments, as a rule, are not appealable may be conceded, but there are exceptions to the general rule. The record shows that George A. Mottman was not a party to the second partition action, and that he became a purchaser after and in pursuance of the decree. If the judgment is vacated and the sale is annulled, the order as to him becomes a final adjudication. If he cannot now appeal, he can have no relief whatever, as he is not a party to the original action and cannot participate in a trial thereof. The issues to be re-tried are between Rebecca A. Prince and the respondents Jesse Prince and Harold Prince. The rule announced in *Pierce County v. Bunch*, 49 Wash. 599, 96 Pac. 164, is applicable here. It was there held that an order vacating a tax foreclosure judgment, a tax sale and tax deed, could be appealed by a purchaser at the tax sale, who had not been a party to the original suit. We there said:

"The appellant was brought into this proceeding but has no interest in or control over the original action. The right which it now asserts cannot be asserted in the tax case nor on appeal from the tax judgment. While the proceeding is in name a motion to vacate a tax judgment, so far as the appellant is concerned it is in substance and effect a proceeding to set aside a tax sale and tax deed. Had such relief been sought in an independent action, there is no doubt that a right of appeal would exist, and the appellant should not be deprived of that right because its title was adjudicated under the guise of a motion interposed after judgment in an action to which

it was not originally a party. For these reasons the order is, in effect, final as to the appellant, and is therefore appealable."

The motion to dismiss is denied.

Respondents' principal contentions in support of their motion and petition to vacate the decree were, that the guardian *ad litem* had failed to properly discharge his duties; that he had been guilty of collusion with other parties to the action; that the referee had not properly advertised the sale; and that the real estate sold for an inadequate price.

It must be remembered that the vacated decree was rendered upon a trial which was had after the trial in the superior court of the first case of *Prince v. Prince, supra.* Both trials were before the same superior court judge. On the trial of the second action, the evidence introduced on the trial of the first action was, by stipulation, admitted as evidence. Other evidence was also admitted. The record in this proceeding shows that, on the trial of the second action, the guardian *ad litem* claimed and asserted that the first tract described in the vacated decree was community property, and that his minor wards were entitled to one-half thereof. It further shows that he also contended that the second tract described in the vacated decree was the separate property of Jonathan D. Prince; that he vigorously resisted the lien claimed by Rebecca A. Prince; that he insisted that, as Rebecca A. Prince had elected to take under the law and not under the will, and the separate property had been devised to his minor wards, they were entitled, in view of her election, to a present fee simple estate in and to the entire tract. These contentions were made in good faith in the light of the holding of the trial judge, made in the first action, to the effect that Rebecca A. Prince was entitled to her election to take under the law. That ruling, although subsequently held to be erroneous in *Prince v. Prince, supra,* at the time of the trial of the second action was presumed to be correct. Having this decision of the trial judge in mind, we fail to see

how the guardian *ad litem* can be charged with a failure
to discharge his duties.    In fact, the position he then took,
had it been successful, would have resulted in securing to the
minors an immediate present estate of considerable value, and
possibly a greater value than that for which they now con-
tend.    It would serve no good purpose to state the evidence in-
troduced on the hearing of the petition to vacate the decree.
We have read it at length, with the result that we are satis-
fied the guardian *ad litem*, in the light of the facts as they
then existed and as they have been stated, acted in good faith
and for the best interests of his wards as he was then advised.
He took no appeal from the final decree, but that omission
does not amount to misconduct or a failure to discharge his
duty.    While it may now be conceded, in view of our decision
in *Prince v. Prince, supra,* that the vacated decree was er-
roneous, it does not follow that it was fraudulently obtained,
or that, in the absence of an appeal, it should now be va-
cated.    We are unable to find any bad faith, collusion, or
misconduct on the part of the guardian *ad litem.*

As George A. Mottman and June Mottman, his wife, are
the only persons who are prosecuting this appeal, we find it
unnecessary to consider further the question whether the de-
cree was erroneous or should for any reason be vacated as to
the defendant Rebecca A. Prince, we having concluded that, in
any event, the appellants Mottman and wife are entitled to
be protected in their purchase of the land.    Rem. & Bal. Code,
§ 1742 (P. C. 81 § 1237), provides that:

"If by a decision of the supreme court the appellant be-
comes entitled to a restoration of any part of the money or
property that was taken from him by means of the judgment
or order appealed from, either the supreme court or the court
below may direct an execution or writ of restitution to issue
for the purpose of restoring to the appellant his property, or
the value thereof.    But property acquired by a purchaser in
good faith, under a judgment subsequently reversed, shall not
be affected by such reversal."

Had the guardian *ad litem* prosecuted an appeal to this court from the final decree, and had a reversal been obtained, yet, under the provisions of this section, the appellants Mottman and wife would be entitled to protection in and to the property they had purchased. They were not parties to the second partition action. They took no part in any trial or proceedings that resulted in the final decree and order of sale. They bought in the open market, at a public sale made in pursuance of a judicial decree, which was fair, regular, and valid on its face, which disclosed no errors, and which had been rendered in an action in which the court by proper process had obtained jurisdiction of all the parties, and also had jurisdiction of the subject-matter. It is the policy of the law to protect third parties who, in good faith and for value, become purchasers at judicial sales, so that the highest and best price may be obtained at such sales. Section 1742, *supra*, which is the declaration of a rule generally recognized and announced by courts of justice, was considered by this court in *Singly v. Warren*, 18 Wash. 434, 51 Pac. 1066, 63 Am. St. 896. It was there held that an execution plaintiff is not a purchaser in good faith in the sense that he will be entitled to retain property purchased by him under a judgment subsequently reversed, but that his title will be divested by a reversal, and the parties to the litigation will be restored to the same position in which they were prior to the rendition of the judgment. George A. Mottman was not a party to the original action or litigation herein. On the contrary, he was a purchaser in good faith. In *Singly v. Warren*, *supra*, this court clearly recognized the right of such a purchaser, in the following language:

"But, that a stranger to the record, who, in good faith, purchases land at an execution or judicial sale under a valid judgment, which has not been superseded by the filing of a proper bond, acquires rights which are not affected by a subsequent reversal of the judgment, is a doctrine universally announced by the courts. This rule has been recognized from very early times, and the reason of it is, as stated in *Manning's Case*, 8

Coke, 192, and many subsequent cases, that if the title obtained by the purchaser in such cases were avoided, the vendee would lose both his property and his money, and great inconvenience would therefore follow, as no one would buy of the sheriff in such cases, and execution of judgments would not be done. *Corwith v. State Bank*, 15 Wis. 289. See, also, *Woodcock v. Bennet*, 1 Cow. 734 (13 Am. Dec. 568). Our law, like the law elsewhere, permits judgments and decrees to be enforced during the pendency of appeals unless a bond to stay proceedings is given as required by law, and the courts have always construed the law so as to inspire confidence in judicial and execution sales by protecting *bona fide* purchasers at such sales from loss or injury by reason of erroneous judgments or decrees. It would be unjust to require such purchasers to suffer loss on account of errors of the trial courts of which they had no knowledge, and which they were nowise instrumental in producing. And such a requirement would be contrary to the settled policy of the law to encourage bidding at judicial sales, and to prevent the property of debtors from being sacrificed thereat. Freeman, Judgments (4th ed.), § 484; *Marks v. Cowles*, 61 Ala. 299."

Had the guardian *ad litem* appealed from the decree and had a reversal been obtained after the sale to George A. Mottman, such a reversal would not have affected his title as a *bona fide* purchaser. This being true, we fail to understand how, after the time for an appeal has expired, the respondents who were served with process, and who as minors were represented by their guardian *ad litem*, can now have the right to vacate and annul the sale to Mr. Mottman because of any irregularities or errors which resulted in the final decree which the trial court had jurisdiction to enter. Had the land been purchased by Rebecca A. Prince, a party to the action, a different question, which we need not now consider, would be presented. The rule announced in the above quotation from *Singly v. Warren* is well sustained by cases cited in our opinion and by the overwhelming weight of authority. The same rule prevails when a decree has been entered against minors properly served and represented by a guardian *ad*

*litem.* Section 8, chapter 132, of the 1906 Code of the state of West Virginia, reads as follows:

"If a sale of property be made under a decree or order of court, and such sale be confirmed, though such decree or order be afterwards reversed or set aside, the title of the purchaser at such sale shall not be affected thereby; but there may be restitution of the proceeds of sale to those entitled."

In *Chapman v. Branch*, 72 W. Va. 54, 78 S. E. 235, a case similar in many particulars to the instant case and involving identical questions, the supreme court of appeals of West Virginia said:

"We think it settled law in this state, that the title of an immediate purchaser, and of remote purchasers, not parties under a judicial decree, cannot be disturbed or affected by reversal on appeal, or on setting aside of a decree of sale for mere error therein, not going to the jurisdiction of the court, and that Smith and those holding under him are now protected by section 8, chapter 132, Code 1906. *Sinnett v. Cralle's Adm'r*, 4 W. Va. 600; *Martin v. Smith*, 25 W. Va. 579, 586; *Dunfee v. Childs*, 45 W. Va. 165; *Stewart v. Tennant*, 52 W. Va. 560, 7 Syl.; *Perkins v. Pfalzgraff*, 60 W. Va. 121; *Hansford v. Tate*, 61 W. Va. 207. The reasons for this rule and the legal principles underlying it are sufficiently covered by the opinions in the cases cited, and particularly in the cases of *Dunfee v. Childs* and *Perkins v. Pfalzgraff, supra*, and we need not reiterate them. These cases or some of them apply this rule to infants as well as adults proceeding by *prochein ami* before majority, as they may, *Poling v. Poling*, 61 W. Va. 78; *Seymour v. Alkire*, 47 W. Va. 302, 305, and cases cited, or in proper person after disability removed either under section 7, chapter 132, Code, or by motion, original bill or bill of review to set aside such decree of sale."

In *Denk v. Fiel*, 249 Ill. 424, 94 N. E. 672, the distinction between the rights of a purchaser at a judicial sale not a party to the action, and a purchaser who was a party to the action, is clearly defined. Referring first to the rights of a purchaser not a party to the action, the court, at page 430, said:

"It is a rule founded on reason and well supported by authority, that a purchaser at a judicial sale who is not a party to the record will be protected against any errors or irregularities in the proceeding anterior to the sale, provided that the court rendering such decree had jurisdiction. Innocent third parties have a right to rely upon a judgment or decree of a court having jurisdiction to pronounce it. They are not required to look beyond the question of jurisdiction, and if the decree is one which the court has jurisdiction to render, both as to subject matter and the parties, innocent purchasers acting in good faith will be protected notwithstanding the existence of errors which would cause a reversal of such decree or judgment by the court of review. *Montanye v. Wallahan,* 84 Ill. 355; *Thompson v. Frew,* 107 id. 478; *Crawford v. Thomson,* 161 id. 161; *Ure v. Ure,* 223 id. 454."

Later in its opinion, referring to the rights of parties to the action who became purchasers and who held in their hands the subject-matter of the original decree, the court, at page 431, further says:

"When the subject matter of the original decree is in the hands of persons who were parties or in privity with the parties to the original proceeding, a bill may be filed by infants for the purpose of setting aside such decree or judgment for fraud or for any error which appears upon the face of the record for which such decree or judgment would be reversed by a court of review. The reason for this distinction is that the party to a suit is presumed to know of all the errors in the record, and cannot acquire any rights or interests based on such erroneous decree that will not be abrogated by a subsequent reversal or annulment of such decree. All titles acquired by parties to an erroneous record are held subject to be divested when such erroneous judgment is reversed or set aside. *McJilton v. Love,* 13 Ill. 486; *Chickering v. Failes,* 29 id. 294; *Cable v. Ellis,* 120 id. 136; *Aurora and Geneva Railway Co. v. Harvey,* 178 id. 477; *Ure v. Ure, supra;* Freeman on Judgments, sec. 4, p. 81."

The distinction thus announced is clear. Mr. Mottman was not a party to the action in which the decree was entered. He purchased in good faith relying upon the decree when in full force and effect, and under the statute and the well

established doctrine announced by this and other courts, should be protected in the title which he obtained. *Marquis v. Davis*, 113 Ind. 219, 15 N. E. 251; *Rhea v. Shields*, 103 Va. 305, 49 S. E. 70; *Livingston v. Noe*, 69 Tenn. 55; *Hansford v. Tate*, 61 W. Va. 207, 56 S. E. 372.

In *Gray v. Brignardello*, 1 Wall. 627, the court said:

"It is a well-settled principle of law, that the decree or judgment of a court, which has jurisdiction of the person and subject-matter, is binding until reversed, and cannot be collaterally attacked. The court may have mistaken the law or misjudged the facts, but its adjudication when made, concludes all the world until set aside by the proper appellate tribunal. And, although the judgment or decree may be reversed, yet, all rights acquired at a judicial sale, while the decree or judgment were in full force, and which they authorized, will be protected. It is sufficient for the buyer to know, that the court had jurisdiction and exercised it, and that the order, on the faith of which he purchased, was made and authorized the sale. With the errors of the court he has no concern. These principles have so often received the sanction of this court, that it would not have been deemed necessary again to reaffirm them, had not the extent of the doctrine been questioned at the bar."

Respondents further contended that the referee did not give proper notice of the sale. In his report the referee says:

"That on the said 14th day of November, 1910, I not only posted the said notice attached at the said court house door, but I also posted an exact copy thereof at the door of the city hall of the city of Olympia, and at the corner of Third and Main streets in the city of Olympia, Thurston county, state of Washington, said three places being three of the most prominent places in said county, and moreover I did post a copy of said notice on the lands to be sold in a conspicuous place at the main gate entering said lands. That I moreover caused a copy of said notice to be published in the . . . . . . . . . . . . ., a newspaper published weekly in the town of Tenino in said Thurston county and of general circulation throughout the said Thurston county, and state of Washington, and the newspaper nearest said land and which newspaper is published on . . . . . . . . . . . . . . each and every week,

and that said notice was published in said newspaper from its issue of the .............. day of November, 1910, for four consecutive weeks and five publications prior to the 14th day of November, 1910, all of which more fully appears from the affidavit of publication of the publisher of said newspaper hereunto attached and made a part of this return."

The affidavit of the publisher, of which mention is made, does not appear in the record now before us. The sale was made on December 19, 1910. An order of confirmation, made and entered on January 19, 1911, found and recited that the sale was had after notice posted and published as by law required. This record shows not only that the notice was posted, but that it was published for four consecutive weeks in five issues, in a weekly newspaper published and of general circulation in Thurston county, Washington. It seems apparent that the use of the words "14th day of November, 1910," in the return of the referee was a clerical error, and that the words "14th day of *December*" were intended. Rem. & Bal. Code, § 864 (P. C. 81 § 1503), provides that all sales of real property made by referees shall be made in the manner required for the sale of real property on execution. Rem. & Bal. Code, § 582 (P. C. 81 § 925), pertaining to execution sales, provides that, before an execution sale of real estate, notice thereof shall be given, by posting a notice particularly describing the property, for a period of not less than four weeks prior to the date of sale in three public places of the county, one of which shall be at the courthouse door where the property is to be sold; and publishing a copy thereof once a week, consecutively, for the same period, in a newspaper of general circulation published in the county. The return of the referee and the order of confirmation show a substantial compliance with this statute, although neither the name of the newspaper nor the day of the week on which the paper was issued was stated. Whether this was an irregularity of which advantage could be taken prior to the confirmation, we need not now decide, for in any event it was

cured by the order of confirmation. *Parker v. Dacres*, 1 Wash. 190, 24 Pac. 192; *McHugh v. Conner*, 68 Wash. 229, 122 Pac. 1018; *Johnson v. Bartlett*, 50 Wash. 114, 96 Pac. 833.

Respondents further contended that the land, although worth $18,000, was sold for $8,100. To sustain this contention they rely on the evidence of witnesses who testified to the value of the land two years after the sale. The record shows that the first sale made by the referee was set aside at the instance of the guardian *ad litem*. This same land was appraised on June 28, 1906, at $6,245, by the appraisers of the estate of Jonathan D. Prince, deceased. It was sold to Mottman on December 17, 1910, for $8,100. In December, 1912, respondents' witnesses testified that its maximum value was then $20,000. No evidence was given as to its value at the date of the sale to Mottman. The record shows that the appellant George A. Mottman offered to convey the land to respondents for the price he had paid with a moderate rate of interest added, and that the offer was made to avoid this litigation. In *Johnson v. Johnson*, 66 Wash. 113, 119 Pac. 22, property of the alleged value of $1,700 was sold on execution for $195.50, and it was there contended that the sale should be vacated for inadequacy of price. Passing upon this contention, the late Chief Justice Dunbar said:

"The testimony on the part of the respondent was that the property was worth from $1,700 to $1,800; on the part of the witnesses for the appellant, that it was worth about $1,-000, the appellant himself, at the time of the trial, offering to take $1,000 for it. But while the amount bid was disproportionate, it is the general rule that inadequacy of price alone will not justify the setting aside of a judgment sale unless the disparity is so gross as to shock the conscience, and particularly where the estate is sold at public auction on legal notice and where no fiduciary relation exists."

Under the circumstances disclosed by the evidence, we cannot find such an inadequacy of price as will avoid the sale after confirmation and at this time.

We conclude that the trial court erred in vacating the sale. No appeal has been prosecuted by Rebecca A. Prince. As to her, the judgment vacating the decree will be permitted to stand, so that respondents may take such further legal steps as they deem proper in this or any other action to protect their rights in and to the proceeds of the referee's sale. As to the appellants Mottman and wife, the order vacating the sale will be reversed, with directions to the trial court to enter an order protecting their title under the provisions of Rem. & Bal. Code, § 1742 (P. C. 81 § 1237). The appellants will recover their costs on this appeal.

MAIN, ELLIS, and CHADWICK, JJ., concur.